Ethan W. SMITH, Margaret S. Smith, Paul E. Everetts and Hazel Everetts, Appellants,

v.

## ZONING HEARING BOARD OF HUNTINGDON BOROUGH.

Commonwealth Court of Pennsylvania.

Argued April 15, 1999.

Decided July 8, 1999.

Ethan W. Smith, Huntingdon, for appellants.

Charles B. Swigart, Huntingdon, for appellee.

Before SMITH, J., FRIEDMAN, J., and KELLEY, J.

KELLEY, Judge.

Ethan W. Smith, Margaret S. Smith, Paul E. Everetts and Hazel Everetts (collectively, the Neighbors) appeal from a final order of the Court of Common Pleas of Huntingdon County (trial court) which affirmed a decision of the Zoning Hearing Board of Huntingdon Borough (Board) granting a special exception to Clinton R. Corbin and Audrey N. Corbin (Applicants) and dismissing the Neighbors' appeal.

On April 2, 1998, the Applicants filed an application for a special exception under the Huntingdon Borough Zoning Ordinance (Ordinance) [1] to' operate an automobile repair shop on their property. The property, a former fire hall, is located in the R–U Residential Urban District (R–U District) under the Ordinance. Public hearings on the application were held before the Board on April 27, 1998 and May 4, 1998, wherein the Neighbors objected to the special exception.

Based upon the evidence presented, the Board made the following findings of fact. The Board found that although the proposed use did not fall specifically within the categories of permitted uses or conditional uses in the R–U District, it was also not prohibited by the Ordinance. The Board found that the proposed use was a "use not provided for" controlled by Sec-

---

[1] Adopted by the Borough Council of the Borough of Huntingdon September 19, 1972 as Ordinance No. 435, *as amended.*

tion 211–45 of the Ordinance which provides that such a "use may be permitted if it is similar and compatible with permitted uses in the district and in no way is in conflict with the general purpose and intent of the chapter." The Board found that located in the immediate vicinity of the subject premises are numerous other commercial or similar uses to that requested by the Applicants, including a Sheetz convenience store, a bank, a pizza shop, and an automobile repair business. The Board also found that the Applicants have operated an automotive repair business for a number of years in the immediate vicinity of the proposed new location. By placing certain conditions upon the approval, the Board found that the integrity of the neighborhood could be maintained while permitting the relocation of an existing commercial enterprise. On the basis of these findings, the Board approved the Applicants' request for special exception.

On June 9, 1998, the Neighbors appealed the Board's decision to the trial court. The trial court reviewed the action of the Board without taking additional evidence. By order dated October 29, 1998, the trial court dismissed the Neighbors' appeal and confirmed the action of the Board. The Neighbors now appeal to this Court.[2]

The Neighbors have presented the following issues for our review:

1. Whether a zoning hearing board commits an error of law or an abuse of discretion in approving a request for a special exception, pursuant to a provision of a zoning ordinance which provides for the approval of a proposed use when the use is similar and compatible with permitted uses in the district, when the zoning hearing board finds that the proposed use is similar only to conditional and non-conforming uses in the district.

2. Whether a zoning hearing board commits an error of law, abuses its discretion, or makes a finding not supported by substantial evidence in the record, by granting a special exception when the applicants for the special exception failed to provide plans, testimony or other evidence that demonstrates that the proposed use conforms with the criteria for granting a special exception as set forth in the zoning ordinance.

First, the Neighbors contend that the Board committed an error of law or an abuse of discretion in approving the Applicants' request for a special exception pursuant to Section 211–45 of the Ordinance which provides for the approval of a proposed use only when the use is similar and compatible with *permitted uses* in the district, when the proposed use was only similar and compatible with the conditional and non-conforming uses in the R–U District. We disagree.

We begin by stating that a zoning hearing board is the entity charged with the interpretation and application of the zoning ordinance. It is well settled that a zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. *Borough of Milton v. Densberger,* 719 A.2d 829 (Pa.Cmwlth. 1998). *See Johnston v. Upper Macungie Township,* 162 Pa.Cmwlth. 170, 638 A.2d 408 (1994). This principle is also codified in Section 1921(c)(8) of the Statutory Construction Act of 1972, 1 Pa.C.S.

---

**2.** Where, as here, the trial court has not taken any additional evidence, this Court's scope of review is limited to a determination of whether the zoning hearing board committed an error of law or abused its discretion. *Hill District Project Area Committee, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 162 Pa.Cmwlth. 323, 638 A.2d 278 (1994), *petition for allowance of appeal denied,* 538

Pa. 629, 646 A.2d 1182 (1994). An abuse of discretion will only be found where the zoning board's findings are not supported by substantial evidence. *Id.* Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Teazers, Inc. v. Zoning Board of Adjustment of the City of Philadelphia,* 682 A.2d 856 (Pa.Cmwlth.1996).

§ 1921(c)(8).[3] The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering. *Willits Woods Associates v. Zoning Board of Adjustment of City of Philadelphia,* 138 Pa.Cmwlth. 62, 587 A.2d 827 (1991).

Section 211–45 of the Ordinance provides that "[w]henever in any district . . . a use is neither specifically permitted or denied and an application is made by a property owner to the Zoning Officer for such use, the Zoning Officer shall refer the application to the Zoning Hearing Board, which shall have the authority to permit the use or deny the use." Section 211–45 further provides that "[t]he use may be permitted if it is *similar and compatible with permitted uses* in the district and in no way is in conflict with the general purpose and intent of this chapter." (Emphasis added).

The term "use" is defined by the Ordinance as the specific purpose for which land or a building is designed, arranged, intended or for which it is or may be occupied or maintained. Section 211–3 of the Ordinance. This definition further provides that the "term 'permitted use' or its equivalent shall not be deemed to include any nonconforming use." *Id.*

The purpose of the R–U District is to design a pattern of controls to protect the existing character of the district, enhance insofar as possible existing investments and to provide for future development that would guarantee a continued economically sound district within the borough. Section 211–20(A) of the Ordinance. In keeping with this purpose, the R–U District encompasses the following classifications of uses:

B. Permitted uses and structures:

(1) One-family detached dwellings.

(2) Two-family dwellings.

(3) Conversion apartments not to exceed three (3) families per structure. No fire escapes will be erected on a wall facing a street.

C. Permitted nonresidential uses and structures:

(1) Churches. . . .

(2) Public and private schools. . . .

(3) Public parks, public playgrounds, municipal recreation areas.

(4) Municipal buildings, public libraries. . . .

(5) Philanthropic institutions, hospitals. . . .

(6) Home occupation (Note; see § 211–3), and further provided that no more than one (1) employee other than the residents of the dwelling shall be permitted. "Home occupation" is deemed to include professional offices of attorneys, architects, landscape architects, engineers, accountants, physicians, dentists, realtors, insurance agents and municipal officials. Off-street parking and service areas shall be required subject to the approval of the Zoning Hearing Board. Signs identifying home occupation: see § 211–43A(9).

D. Permitted accessory uses and structures:

(1) Private garages and carports, when supplementary and incidental to a permitted use.

(2) Private swimming pool.

---

**3.** This section provides:
When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

\* \* \*

8) Legislative and administrative interpretations of such statute.

The rules of statutory construction are applicable to both statutes and ordinances. *See Heck v. Zoning Hearing Board for Harvey's Lake,* 39 Pa.Cmwlth. 570, 397 A.2d 15 (1979).

E. Conditional uses, when approved as a special exception by the Zoning Hearing Board:

(1) Multifamily structures.

(2) Radio transmission....

(3) Neighborhood commercial facilities necessary to the everyday convenience of the residents, to include but not necessarily limited to offices and studios, banks, drugstores and grocery stores.

(4) Restaurants....

(5) Personal service facilities, such as barbershop, beauty shop, shoe repair and a dry-cleaning pickup station.

(6) Conversion apartments....

(7) Clubs, lodges....

(8) Townhouses....

(9) Planned residential development....

(10) Conditional uses involving commercial enterprises or facilities of any type shall be limited to hours of operation from 6:00 a.m. to 12:00 midnight.

Section 211–20 of the Ordinance.

■ In the present case, the Board found that the proposed use of the property as an automobile repair garage was similar and compatible with other "permitted uses" in the R–U District. In reaching this conclusion, it is clear that the Board has interpreted the term "permitted uses" to include "conditional uses" as well as "permitted uses," "permitted nonresidential uses" and "permitted accessory uses." The Board's interpretation does not conflict with the Ordinance which only excludes nonconforming uses, not conditional uses, from the term "permitted uses." The Board's interpretation is also in accord with case law which provides that a use allowed by special exception is a "permitted use." *Kulak v. Zoning Hearing Board of Bristol Township,* 128 Pa. Cmwlth. 457, 563 A.2d 978 (1989). We, therefore, conclude that the Board's interpretation of the Ordinance is not an error of law or an abuse of discretion. As the Neighbors do not dispute that the proposed use is similar and compatible with the conditional uses in the R–U District, we conclude that the Board did not err or abuse its discretion in finding that the proposed use satisfied the requirements under Section 211–45 of the Ordinance.

■ Next, the Neighbors contend that the Board abused its discretion and committed an error of law in granting the special exception as the Applicants failed to meet their burden of proving that the proposed use met the objective requirements contained in the Ordinance for granting a special exception. We disagree.

■ In addressing an application for a special exception, a zoning hearing board must employ a shifting burden of persuasion. *McGinty v. Zoning Board of Adjustment of the City Of Pittsburgh,* 717 A.2d 34 (Pa.Cmwlth.1998). Initially, the applicant must demonstrate its entitlement to a special exception by establishing compliance with the specific objective requirements for the exception detailed in the ordinance. *Bray v. Zoning Board of Adjustment,* 48 Pa.Cmwlth. 523, 410 A.2d 909 (1980). Once the applicant has satisfied this initial burden, the burden then shifts to any objectors to establish that the proposed exception would be detrimental to the public health, safety and welfare. *Id.*

At the hearing held on April 27, 1998, the Board identified five sections of the Ordinance which were required to be met for the Board to grant the Applicants' special exception. These sections are Section 211–20 (Residential/Urban Zone); Section 211–45 (Uses Not Provided For); Section 211–35 (Loading and Unloading Space); Section 211–41(C)(2) (Off Street Parking); and Section 211–43 (Signs).

Section 211–35 of the Ordinance provides that "[i]n addition to off-street parking space required herein, any building erected, converted or enlarged in any district for commercial, office building, manu-

facturing, wholesale, hospital or similar uses shall provide adequate off-street area for loading and unloading of vehicles." This section further provides that "[i]n no case ... shall the public rights of way be used for loading or unloading materials." Section 211–41(C)(2)(f) of the Ordinance pertaining to parking at automobile service stations provides that there must be "at least one parking space for each 200 square feet of floor or ground area, or a fraction thereof devoted to repair or service facilities, which shall be in addition to the space allocated for the normal storage of motor vehicles. In no event shall parking be permitted on the public rights of way." Section 211–43 of the Ordinance provides "[s]igns may be erected and maintained only when in compliance with the provisions of this article and any and all other ordinances and regulations relating to the erection, alteration or maintenance of signs and similar devices."

The Board found that the Applicants had complied with the above requirements. Based upon our review of the record, substantial evidence exists to support the Board's finding. Since the Board held that the proposed use does not fall specifically within the categories of permitted use or conditional uses in the R–U District, the question of whether Applicants met their burden of proof under Section 211–20 need not be addressed. As addressed above, the proposed use was similar and compatible with the permitted uses in the R–U District as required under Section 211–45 of the Ordinance. With regard to compliance under Sections 211–35 and 211–41 pertaining to adequate off-street area for loading and unloading vehicles and parking, Clinton Corbin testified that he had room for six or seven cars to park at the rear of the building, room for nine cars in the two bays of the building and room for six more vehicles to park in front of the building. Although actual measurements were not offered, compliance with these provisions is also supported by the fact that the property was a former fire hall with the capacity to accommodate two fire trucks inside the building as well as in front of the building without extending into the street. With regard to Section 211–43 relating to signs, although no evidence was presented, the Applicants did not state that they intended to erect a new sign. We, therefore, conclude that the Board did not err in granting the special exception to the Applicants as substantial evidence exists to support conformity with the criteria set forth in the Ordinance.

Accordingly, the order to the trial court is affirmed.

### ORDER

AND NOW, this 8th day of July, 1999, the order to the Court of Common Pleas of Huntingdon County, dated October 26, 1998, at No. 98–864, is affirmed.