# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Edward T. Franks and Theresa       :
S. Franks, husband and wife,        :
                Appellants    :
                         :
          v.              :
                         :
Fayette County Zoning Hearing    :
Board                     :
                         :
          v.              :
                         :
Shawn Gowatski and Billi        :   No. 1638 C.D. 2014
Gowatski, his wife           :   Argued: November 17, 2015

BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge[1]
                HONORABLE P. KEVIN BROBSON, Judge
                HONORABLE ANNE E. COVEY, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                  FILED: May 12, 2016


          Edward T. Franks and Theresa S. Franks, husband and wife, (collectively, Objectors) appeal from the Fayette County Common Pleas Court's (trial court) August 11, 2014 order affirming the Fayette County Zoning Hearing Board's (ZHB) order denying their appeal. Objectors present six issues for this Court's review: (1) whether the ZHB erred by finding Shawn Gowatski (Applicant) and Billi Gowatski (Mrs. Gowatski) (collectively, Applicants) met the requirements in the Fayette County Zoning Ordinance (Ordinance) for a special exception; (2) whether the ZHB erred by concluding that Applicants met their burden under Sections 1000-500, 1000-503 and 1000-842 of the Ordinance; (3) whether the ZHB improperly

---

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt became President Judge.

shifted the burden of proof to Objectors; (4) whether the ZHB erred by limiting Objectors' counsel's cross-examination; (5) whether the ZHB erred by failing to consider evidence of the neighborhood's residential character, the lack of safety measures for dogs of vicious propensity, and the health, safety and welfare of the adjacent community; and (6) whether the ZHB erred in failing to require soundproofing in the Applicants' land development plan.[2] After review, we affirm.

Applicants own real property located at 270 Gimlett Hill Road in Mt. Pleasant, Bullskin Township, Fayette County, Pennsylvania (Property). The Property is located in an A-1 Agricultural-Rural zone. Applicants filed a petition for a special exception (Petition) to operate a boarding kennel for dogs and cats on the Property. The ZHB held three hearings during which Applicants, Objectors and others testified.

Based on the evidence presented, the ZHB made the following relevant findings: Applicants planned to construct a 39.4 x 99.4 foot building (Building) on the Property for use as a boarding kennel. The kennel will be operated between 8:00 a.m. and 5:00 p.m., Monday through Saturday. Applicants also intend to offer pet grooming services to the general public. Animal pick-up and drop-off will occur within the kennel from 8:00 a.m. to 10:00 a.m. and 5:00 p.m. to 7:00 p.m. Applicants intend to install a ventilation and soundproofing system in the Building. Specifically, the Building will be constructed using foam-filled concrete blocks and an insulated roof to control sound. Although Applicants have not conducted sound studies or obtained sound-related information from similar facilities, Applicants intend to comply with the Ordinance's decibel limitations. The Building will have a maximum of thirty indoor/outdoor runs for dogs and an indoor area to house a maximum of ten cats. The outdoor dog runs will only be used during daylight hours, with a maximum of five dogs per side. Applicants will install a lockable fence around the outdoor

_____

[2] By January 3, 2015 letter, the ZHB notified this Court that it would not file a brief, but joined in the arguments set forth in Applicants' brief.

2

animal runs. Each run will be locked, and a privacy fence will be installed around the animal runs. The animal runs will be cleaned a minimum of twice per day. Liquefied animal waste will be washed into a channel with a six to twelve inch containment lip which will run to a holding tank that will be installed and operated in accordance with the Bullskin Township's Holding Tank Ordinance. Solid waste will be double-bagged and refrigerated until picked up by the municipal waste disposal service. Applicants will control excessive dog barking by requiring dog owners to use bark suppression collars. Lighting for the Building will be installed so not to impact the surrounding properties.

On November 27, 2013, the ZHB concluded that the Applicants had met their burden of proof, and that the proposed kennel would not adversely impact the health, safety and welfare of the surrounding residents. The ZHB further acknowledged that it may grant a special exception for a boarding kennel in an A-1 Agricultural-Rural zone. Accordingly, the ZHB issued Resolution 13-41, granting Applicants' Petition.

Objectors appealed to the trial court. On August 11, 2014, based on the ZHB's record, the trial court affirmed the ZHB's decision. Objectors appealed to this Court.[3]

---

[3]     Where the trial court takes no additional evidence, this Court's 'review is limited to determining whether **the Board** committed an abuse of discretion or an error of law.' *Taliaferro v. Darby T*[*wp.*] *Zoning Hearing B*[*d.*], 873 A.2d 807, 811 n.1 (Pa.[]Cmwlth.[]2005). A zoning hearing board abuses its discretion when its factual findings are not supported by substantial evidence. *JoJo Oil Co. v. Dingman T*[*wp.*] *Zoning Hearing B*[*d.*], 77 A.3d 679, 685 n.6 (Pa.[]Cmwlth.[]2013). 'Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' *Id.*

*Tinicum Twp. v. Nowicki*, 99 A.3d 586, 589 n.6 (Pa. Cmwlth. 2014) (emphasis added).

Objectors' first argument heading in their brief describes Objectors' first issue as a challenge to the ZHB's finding that Applicants provided sufficient evidence of statutory compliance for the grant of a special exception. However, the heading is wholly different from the content of their argument. Objectors' entire first argument challenges the **trial court's** interpretation and application of relevant ordinance sections, **not** the ZHB's decision. Objectors cite to and quote from particular portions of the trial court's opinion, arguing that the trial court's interpretation is erroneous. Objectors' first argument is totally devoid of any allegation of error on the part of the ZHB.

Since the trial court took no new evidence, it is the ZHB's "decision, not the [trial] court's [decision], we must review." *City of Phila. v. Angelone*, 280 A.2d 672, 676 (Pa. Cmwlth. 1971); *see also In re Brickstone Realty Corp.*, 789 A.2d 333, 338 n.2 (Pa. Cmwlth. 2001) ("Our standard of review . . . pertains to whether the [zoning hearing b]oard, not the trial court, erred or abused its discretion."). Because Objectors' first issue pertains solely to alleged errors of law made by the trial court, which is beyond our scope of review,[4] we decline to address it. *See Borough of St.*

---

[4] Our Supreme Court has explained:

> 'Scope of review' and 'standard of review' are often-albeit erroneously-used interchangeably. The two terms carry distinct meanings and should not be substituted for one another. 'Scope of review' refers to 'the confines within which an appellate court must conduct its examination.' *Coker v. S.M. Flickinger Co*[.]*, Inc., . . .* 625 A.2d 1181, 1186 ([Pa.] 1993). In other words, it refers to the *matters* (or 'what') the appellate court is permitted to examine. In contrast, 'standard of review' refers to the *manner* in which (or 'how') that examination is conducted. In *Coker* we also referred to the standard of review as the 'degree of scrutiny' that is to be applied. *Id*. . . . at 1186.

*Morrison v. Dep't of Pub. Welfare, Office of Mental Health (Woodville State Hosp.)*, 646 A.2d 565, 570 (Pa. 1994).

*Lawrence v. Zoning Hearing Bd. of the Borough of St. Lawrence*, (Pa. Cmwlth. Nos. 119, 218 C.D. 2011, filed March 21, 2012).[5]

Objectors next assert that the ZHB erred when it concluded Applicants met their burden under Sections 1000-500,[6] 1000-503[7] and 1000-842[8] of the Ordinance.

This Court has explained:

The law with regard to conditional uses and special exceptions is clear.

> [T]he applicant for a special exception has both the duty of presenting evidence and the burden of persuading the competent tribunal that his proposal complies with all objective requirements of the ordinance . . . ; the objectors to the application have both the duty of presenting evidence and the burden of persuasion, that the use will have a generally detrimental effect on health, safety and welfare

---

[5] In *St. Lawrence*, this Court noted:

> The Borough also argues that the trial court's Order should be reversed because, other than citing to its standard and scope of review, the trial court did not cite any law or specific record references to support its affirmation of the [zoning hearing b]oard's determination. However, we note that, because the trial court did not take additional evidence, this Court is reviewing the [*zoning hearing b*]*oard's* decision, not the trial court's Order, to determine whether the [*zoning hearing b*]*oard* committed an error of law or abused its discretion.

*Id.*, slip op. at 9 n.5 (citations omitted). We acknowledge that this Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414 of the Commonwealth Court's Internal Operating Procedures.

[6] Section 1000-500 of the Ordinance requires that all property uses comply with Performance Standards contained in Article V.

[7] Section 1000-503 of the Ordinance is a Performance Standard prohibiting excessive noise.

[8] Section 1000-842 of the Ordinance provides that an animal kennel shall be a permitted special exception subject to certain enumerated conditions and/or standards set forth therein.

> or will conflict with expressions of general policy contained in the ordinance.
>
> *Foster Grading Co. v. Venango T[wp.] Zoning Hearing B[d.]*, . . . 412 A.2d 647, 649 ([Pa. Cmwlth.] 1980). Furthermore, the objectors must demonstrate to *a high degree of probability* that the applicant's proposal will substantially affect the health and safety of the community in an adverse manner. It is not sufficient that the protestants allege the mere possibility of adverse impact. Finally, it is important to remember that a conditional use or a special exception is actually a *permitted use* absent proof that the adverse impact on the public interest is greater than might be expected under normal circumstances.

*Robinson Twp. v. Westinghouse Broad. Co.*, 440 A.2d 642, 644 (Pa. Cmwlth. 1981) (citations omitted); *see also Oasis v. Zoning Hearing Bd. of S. Annville Twp.*, 94 A.3d 457 (Pa. Cmwlth. 2014); *Hoppe v. Zoning Hearing Bd. of the Borough of Portland*, 910 A.2d 756, 758 (Pa. Cmwlth. 2006) ("Pennsylvania law provides that a special exception is a use to which an applicant is entitled as a matter of right unless the zoning hearing board determines that the use would adversely affect the community").

Article V of the Ordinance is titled "Performance Standards." Within Article V, Section 1000-500 of the Ordinance states:

> A. All uses must comply with the requirements of this Section. Compliance shall be determined by the Zoning Officer with respect to permitted uses by the [ZHB] with respect to special exceptions and by the Board of County Commissioners with respect to conditional uses. In order to determine whether a proposed use will conform to the requirements of this Article, the County may obtain a qualified consultant's report whose credentials are acceptable to the Board of County Commissioners to testify and whose cost for services shall be borne by the applicant.
>
> . . . .

C. The County may assign a private third[-]party agency to provide measurements for the respective performance standards from §[ ]1000-501 through §[ ]1000-507 [of the Ordinance]. Any associated testing fees must be paid by the applicant ('complainant') to the County (or designee). Any subsequent reimbursement for spent fees would be between the parties involved in the dispute.

Reproduced Record (R.R.) at 131a. Also within Article V, Section 1000-503(A) of the Ordinance provides:

Noise which is determined to be objectionable because of volume, frequency or beat shall be muffled or otherwise controlled, except that fire sirens and related apparatus used solely for public purposes shall be exempt from this requirement. Noise in excess of ninety (90) decibels as measured on a decibel or sound level meter of standard quality and design operated on the A-weighted scale at a distance of twenty-five (25) feet from any property line of the property on which the noise source is located shall not be permitted.

R.R. at 132a.

Article VIII of the Ordinance entitled "Uses by Special Exception" contains Section 1000-800(A) of the Ordinance which expressly governs "[u]ses by [s]pecial [e]xception" and provides: "All applications for a use by special exception shall demonstrate compliance with the applicable express standards and criteria of this Article and the applicable minimum lot area, maximum lot coverage, maximum building height, setback requirements and bufferyard requirements of the zoning district in which the use is proposed." Ordinance § 1000-800(A).[9] The express standards for an animal kennel special exception are contained in Section 1000-842 of the Ordinance, which, among other things, requires that kennels adjacent to

_____

[9] Section 1000-800 of the Ordinance is not contained in the Reproduced Record. It was, however, attached to the certified record.

7

residential lots "be soundproofed[10] to minimize noise impact on adjacent properties." R.R. at 133a.

> The law is well established that:

> It is the duty of the zoning [hearing] board in the exercise of its discretionary power to determine whether a party has met its burden of proof. Determinations as to the credibility of witnesses and the weight to be given to the evidence are matters left **solely** to the Board in the performance of its factfinding role.

*Shamah v. Hellam Twp. Zoning Hearing Bd.*, 648 A.2d 1299, 1304 (Pa. Cmwlth. 1994) (citation omitted; emphasis added); *see also Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.*, 987 A.2d 1243 (Pa. Cmwlth. 2009).[11]

---

[10] The Ordinance does not define the word "soundproof." "Zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words." *Upper Salford Twp. v. Collins*, 669 A.2d 335, 337 (Pa. 1995). The dictionary defines the word "soundproof" to mean, "to insulate so as to obstruct the passage of sound[.]" *Merriam-Webster's Collegiate Dictionary* 1192 (11th ed. 2004).

[11] Section 1000-1103(A) of the Ordinance provides:

> The [ZHB] shall have the power to decide applications for use by special exception as specified in this Chapter in harmony with its general purpose and intent and in accordance with the standards set forth. **The [ZHB] shall approve a use by special exception only if it meets all applicable requirements of this Chapter and the express standards and criteria set forth in Article VIII of this Chapter.** In granting a use by special exception, the [ZHB] may attach such reasonable conditions and safeguards in addition to those expressed in this Chapter as it may deem necessary to properly implement this Chapter and to protect the public's health, safety and welfare.

R.R. at 135a (emphasis added). Notably, Section 1103(A) emphasizes the necessity of compliance with Article VIII of the Ordinance, but does not specifically mention Article V of the Ordinance (Performance Standards).

Objectors contend that Applicants failed to meet their burden regarding the requirements imposed by Sections 1000-503(A) and 1000-842(D)[12] of the Ordinance because Applicants

> presented absolutely no testimony with regard to the manner in which they could or would comply with the standard. To the contrary, [Applicants] did not have a sound expert testify as to the manner in which compliance could be made with the standard not to exceed 90 decibel levels at a distance of 25 feet from the [P]roperty line. [Applicants] did not conduct any sound studies for the proposed boarding kennel on the [Property] or produce sound related information from like type facilities.

Objectors' Br. at 22. Further, Objectors point to Mrs. Gowatski's testimony wherein she admitted that she had no expertise in measuring sound levels.

A review of the record reveals Mrs. Gowatski testified that the Building would be constructed with "eight-inch cinder blocks filled with foam or concrete to help with soundproofing." R.R. at 25a. She also stated that:

> On top of the block it will be stick construction of 2x6 studs filled with insulation. . . . There will be a soundproofing membrane between the insulation and [the] drywall to help with soundproofing. The roofing will be insulated . . . with spray foam or . . . some form of insulation [to help with the soundproofing].

*Id*. She later explained:

> I will be using soundproofing insulation, spray foam. There's a product called DV block. It's a membrane block

---

[12] Although Objectors in their second argument make the general assertion that Applicants failed to meet their burden under Section 1000-842 of the Ordinance, Objectors provided no specific grounds regarding the conditions with which Applicants allegedly failed to comply. Instead, Objectors' basis for their contention that Applicants failed to meet their burden under Section 1000-842(D) of the Ordinance are contained in Objectors' fourth argument discussing the ZHB's alleged error in disallowing certain cross-examination by Objectors' counsel. For purposes of clarity, we will address the latter argument pertaining to Section 1000-842(D) of the Ordinance below.

9

you put between sheet rock and your insulation. I will be using as much soundproofing as I can. As[] I stated before, I live there. So the kennel itself will be soundproofed as best I can [sic].

R.R. at 45a. In addition, Mrs. Gowatski said that she would take all steps necessary to comply with the 90 decibel noise limit set forth in Section 1000-503(A) of the Ordinance's Performance Standards. *See* R.R. at 28a. For example, she testified that to reduce noise, she would limit dogs in the outdoor runs to five dogs on each side of the kennel at any one time, limit the times that the dogs were permitted outside, prevent noisy dogs from using the outdoor runs, and use bark control collars. *See* R.R. at 20a-21a, 37a.

The ZHB, as factfinder, is to evaluate Mrs. Gowatski's credibility and to weigh the evidence presented. *Shamah*. This Court will not intrude upon the factfinder's role so long as there is substantial evidence to support its findings. Although there was no expert testimony describing the planned soundproofing, the Ordinance does not make expert testimony a requirement. Notably, Section 1000-500 of the Ordinance permits, **but does not require** the County to consult an expert. Therefore, Mrs. Gowatski's testimony alone is substantial evidence -- and supports the ZHB's findings. Accordingly, the ZHB properly determined that Applicants met their burden to demonstrate compliance with the Ordinance.

Objectors also argue that the ZHB erred by shifting the burden to Objectors when Applicants had not met their burden.

Once the applicant has satisfied [its] initial burden, the burden then shifts to any objectors to establish that the proposed exception would be detrimental to the public health, safety and welfare.

*Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55, 59 (Pa. Cmwlth. 1999). Because Applicants did meet their burden, the ZHB properly shifted the burden to Objectors. *See id*.

Next, Objectors contend that the ZHB erred when it prevented their counsel Gretchen Mundorff (Counsel Mundorff) from cross-examining Mrs. Gowatski with regard to her compliance with Sections 1000-503(A) and 1000-842(D) of the Ordinance. Objectors cite to two portions of the record documenting exchanges between Objectors' counsel, Applicants' counsel and the ZHB members during the October 30, 2013 hearing.

First, Objectors assert that Counsel Mundorff was precluded from cross-examining Mrs. Gowatski with regard to her compliance with the noise level restrictions set forth in Section 1000-503(A) of the Ordinance. The record reflects that although the ZHB initially encouraged counsel to move on because Mrs. Gowatski had already answered the questions posed, the ZHB ultimately permitted counsel to continue the inquiry to ensure the information was included in the record.

> [Counsel] Mundorff: . . . . I want to create a record and it's my right to do so.
>
> . . . .
>
> [ZHB member] Marella: I believe that was all asked and answered.
>
> [ZHB member] Brown: She already said no, she did not. If she's out of compliance - -
>
> [Counsel] Mundorff: She has no training, she's not an expert, she's never performed the job. She did not hire a sound expert.
>
> [ZHB member] Brown: She testified to that.
>
> [Counsel] Mundorff: If we include all that, put that in the record, I will not ask the question.
>
> [ZHB Chairman] Guerriere: We are going to let you put it in the record quickly.

11

[Counsel] Mundorff: By questions or just by statement, Mr. Chair?

[ZHB Chairman] Guerriere: You want to have something put on the record.

[Applicants' counsel] Bower: Have you ever done any studies on your own, or do you know how to do it, that is the question and the answer is no; is that correct?

[Mrs. Gowatski]: That's correct. I have none.

. . . .

[Counsel Mundorff:] Mrs. Gowatski, given the fact that you have already admitted you have never used a sound meter, you're not a sound expert, you have no training in it, you did not do it in connection with your request for this kennel, isn't it fair to conclude that you really don't know what sound, level decibel level is going to emanate from your kennel at this point, you don't know, do you?

[ZHB Chairman] Guerriere: She's already testified that she does not know any of that expertise. If you're making a statement for the record, so be it. We have got it recorded.

R.R. at 44a-45a.

The record demonstrates that the ZHB properly restricted Counsel Mundorff from repeatedly asking Mrs. Gowatski questions she had already answered. Further, the ZHB permitted counsel to create a record. Accordingly, we discern no abuse of discretion.

Objectors further claim that the ZHB erred because it prevented Objectors' counsel from cross-examining Mrs. Gowatski regarding the soundproofing mandated in Section 1000-842(D) of the Ordinance. Objectors point to the following exchange:

[Counsel Mundorff:] Mrs. Gowatski, is it fair to say that you don't have any training yourself in how to construct a

building with soundproofing materials, do you? In your former life, did you construct soundproof buildings?

[ZHB Chairman] Guerriere: I think this is getting out of hand. She appears to say that she is trying as best she can to minimize soundproofing. And you want to know the exact definition of soundproofing –

[Counsel] Mundorff: I have moved on.

[ZHB Chairman] Guerriere: - - or minimizing it?

[Counsel] Mundorff: I want to know if sometime in her life she performed as a contractor.

[ZHB Chairman] Guerriere: I think it's irrelevant. Move on.

[Applicant's Counsel] Bower: She's indicated that she will hire people to do this. It's not like she's going to build this building herself brick by brick, block by block. This is –

[ZHB Chairman] Guerriere: Okay Mr. Bower, that's fine. Let's move on.

[Counsel Mundorff:] Do we have a contractor in place at this point?

[ZHB Chairman] Guerriere: I think that's irrelevant, too.

[Counsel Mundorff:] Do we have at least a piece of paper, building specifications on it showing the types of materials and how this will be built, do you have anything?

[Applicants' attorney] Bower: Other than her testimony, we don't have a piece of paper.

[ZHB Chairman] Guerriere: Wasn't the earlier testimony here that we went over the construction of the building?

[ZHB member] Payson: Yes.

[ZHB member] Brown: We need to move on.

[ZHB Chairman] Guerriere: Apparently, we can move on from that. If you want to go back in the record, I think that will state exactly how it was.

[Counsel] Mundorff: I'm asking about the building specifications. I'm asking about what contractors use when they build a building. Is there anything like that for us to look at at this point? I'm assuming the answer is no, but that's my question.

[ZHB Chairman] Guerriere: Do you have plans in place at this point other than the size and the information that you gave us before for building construction?

[Mrs. Gowatski]: At this time, no, I don't sir.

[ZHB Chairman] Guerriere: The answer is no.

[Counsel] Mundorff: Okay.

R.R. at 45a-46a.

The above exchange does not reveal an abuse of discretion by the ZHB. The ZHB properly ruled that Counsel Mundorff's line of questioning concerning whether Mrs. Gowatski had ever worked as a contractor was not relevant to whether the Petition should be approved. Applicants intended to hire contractors to build the soundproofed kennel and, thus, Mrs. Gowatski's knowledge of the specific manner in which a building may be soundproofed was irrelevant. *See* R.R. at 11a, 29a. Further, although cross-examination may not have been as broad as that sought by Counsel Mundorff, Mrs. Gowatski ultimately answered counsel's question regarding existing building plans, and it appears from the record that counsel was satisfied with the information disclosed.

Objectors also argue that the ZHB erred by failing to consider evidence pertaining to the neighborhood's residential character, concerns pertaining to dogs of

14

a vicious propensity and the health, safety and welfare of the adjacent properties.[13]  In their brief, Objectors point to objector Edward Franks' testimony about the adjacent properties' residential nature, and the ZHB's refusal to permit the discussion of restrictive covenants on adjacent properties which prohibit farming on those properties and require their use for residential purposes only.  Objectors also note that other neighbors testified about their concerns regarding the negative impact that the proposed kennel would have on the adjacent properties.

Contrary to Objectors' assertions, there is nothing in the ZHB's decision demonstrating that the ZHB failed to consider that the adjacent properties were residential in nature or the impact that the proposed kennel might have upon those properties.  In fact, the ZHB acknowledged Objectors' challenge, stating:

> [] A number of area residents expressed concerns regarding the negative impact that may be created by the proposed boarding kennel on subject property pertaining to noise, the quality of life, odors, traffic, the safety of area residents and property depreciation.
>
> [] The Objectors requested the Petition be denied due to the [Applicants'] failure to meet the burden of proof for compliance with Article V, Performance Standards and Section 1000-842 [of the Ordinance] and **the character of the surrounding neighborhood has changed from agricultural to residential in nature.**

R.R. at 102a (emphasis added).  However, despite considering Objectors' concerns, the ZHB concluded, as it was permitted to do, that "the proposed Special Exception . . . will not adversely impact the health, safety and welfare of the residents of the adjoining and surrounding area." *Id*.  Thus, Objectors' argument is without merit.[14]

---

[13] Objectors also maintain that the trial court erred in its conclusions pertaining to the protections to be afforded to neighboring residents.  However, as previously explained, we are reviewing the ZHB's decision, not the decision of the trial court.

[14] We also reject Objectors' argument that the ZHB erred when it prohibited their counsel "from cross-examining [Mrs.] Gowatski as to the safety protocol which she would use for dogs with

15

Finally, Objectors assert that the ZHB erred by not requiring the inclusion of soundproofing within Applicants' land development plan in accordance with Sections 1000-842(D) and 1000-1103(B)[15] of the Ordinance.[16] Section 1000-842 of the Ordinance provides express standards required for a special exception. Section 1000-1103(B) of the Ordinance requires special exception applicants to submit a land development plan as defined by Article VIII of the Ordinance. Notably, Objectors do not cite to Section 1000-800 of the Ordinance, which is directly relevant to their issue. Section 1000-800 of the Ordinance provides:

> A. **All applications for a use by special exception shall demonstrate compliance with the applicable express standards and criteria of this Article** and the applicable minimum lot area, maximum lot coverage, maximum building height, setback requirements and bufferyard requirements of the zoning district in which the use is proposed.

---

vicious propensities given the eight children who live in close proximity to the proposed kennel." Objectors' Br. at 33. The transcript reflects that, during cross-examination, Counsel Mundorff's inquiry was answered to her satisfaction, whereby she stated, "[t]hat answers the question." R.R. at 47a.

[15] Section 1000-1103(B) of the Ordinance states:

> Applicants for a use by special exception shall submit a land development plan, as defined by Article VIII of this Chapter, and a fee as established from time to time by resolution of the Board of County Commissioners. The land development plan shall be accompanied by a written application in a form prescribed by the County, including an indication of compliance with the express standards and criteria specified in Article VIII of this Chapter.

R.R. at 135a.

[16] Applicants assert that Objectors did not raise this issue in their land use appeal, and thus it is waived. We disagree. Contrary to Applicants' contention, Objectors' "Notice of Land Use Appeal" lists as one of the Board's alleged errors, "[t]he [ZHB] erred in not requiring [Applicants] to provide a building plan . . . with regard to the requirements set forth at Section 1000-842(C) and (D) of the [Ordinance]." R.R. at 96a.

16

B. **All applications for use by special exception approval shall contain the following**:

> 1. A land development plan, as defined by this Chapter, and where renovation or modification of an existing building is immediately contemplated, construction plans showing the scope, nature and extent of said renovation or modifications.

> 2. An application fee in an amount set by resolution of the Board of County Commissioners.

Ordinance § 1000-800 (emphasis added).

There is no dispute that Applicants' land development plan does not contain notations regarding soundproofing. However, as the trial court opined:

> [T]he [ZHB's] Resolution in this matter includes [Applicants'] assurances that they would comply with [the] provisions of the Ordinance by soundproofing the building and requiring all clients to equip their dogs with correction collars. Considering that no 'situations as are expressly provided for and enunciated by the terms of the ordinance,' *Timber Place Assoc*[*s. v. Plymouth Twp. Zoning Hearing Bd.*], 430 A.2d [403,] 405 [(Pa. Cmwlth. 1981)], require the inclusion of soundproofing or fencing within **the land development plan** and given: (1) [Applicants'] assurances, (2) the possibility for periodic inspections, (3) the ability of the [O]bjectors to assert *presently*[-]existing violations of the Ordinance, and (4) [Applicants'] need for yearly reapproval, we find no abuse of discretion by the [ZHB].

R.R. at 116a-117a (footnote omitted; bold emphasis added). We agree with the trial court's analysis. Accordingly, we discern no error.

For all of the above reasons, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Edward T. Franks and Theresa S. Franks, husband and wife,<br><br>                    Appellants<br><br>          v.<br><br>Fayette County Zoning Hearing Board<br><br>          v.<br><br>Shawn Gowatski and Billi Gowatski, his wife | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br><br><br><br><br><br>No. 1638 C.D. 2014 |

## O R D E R

AND NOW, this 12th day of May, 2016, the Fayette County Common Pleas Court's August 11, 2014 order is affirmed.

_____
ANNE E. COVEY, Judge