IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of Joanne Lesko From the Decision : 
Dated June 14, 2018 of the Lower Gwynedd : 
Township Zoning Hearing Board : 
                         : No. 532 C.D. 2019
Appeal of: Joanne Lesko : Argued: June 9, 2020

BEFORE:    HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                         FILED: July 9, 2020

Joanne Lesko (Objector) appeals an order of the Court of Common Pleas of Montgomery County (trial court) which affirms the decision of the Zoning Hearing Board of Lower Gwynedd Township (ZHB) granting a special exception to the Lower Gwynedd Township Ordinance (the Ordinance) to Martin and Marnie Hughes (Applicants). Objector argues that the trial court abused its discretion and committed errors of law in granting the special exception because the ZHB allegedly disregarded provisions of the Pennsylvania Municipalities Planning Code (MPC)[1] and the Ordinance[2] in granting the special exception. Objector also argues that the

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

[2] *See* Lower Gwynedd Twp., Pa., Zoning Ordinance §§1252.03(a)(3), 1252.03(a)(4), 1252.03(a)(6) (1989).

ZHB abused its discretion and committed errors of law by disregarding the "spatial relationship" and "rehabilitation" provisions of the Ordinance.[3]  Finally, Objector argues that the ZHB abused its discretion and committed errors of law by disregarding the historic overlay provision of the Ordinance.[4]  Discerning no error below, we affirm.

## I.    Background

Applicants own real property at 776 Johns Church Lane (Subject Property) in Lower Gwynedd Township.  The Subject Property includes a Manor Home as well as four other existing structures (Additional Structures).[5]  The Subject Property has two road frontages, one along Tennis Avenue and another along Susquehanna Road, which contains a bend where Johns Lane and Susquehanna Road meet.  Finding of Fact (F.F.) No. 34.  Objector resides at 765 Johns Lane, a property that abuts Applicants' Subject Property.  As a neighboring landowner, Objector appealed the granting of the special exception.

Applicants' residence, the Manor Home, was constructed in the 18th century.  The Manor Home and the Subject Property were both recognized by Lower Gwynedd Township as historic resources as of May 10, 2007.  F.F. No. 45.  This

---

[3] *See* Ordinance §1298.19(d)(1).

[4] *See* Ordinance §1298.19(e).

[5] The Subject Property includes the Manor Home, the Spring House, the Ice House and the Blacksmith Shop.  Objector refers to "The Toll House" as an additional structure on the Subject Property.  However, the Toll House is located at 777 Johns Church Lane. While the Applicants own this property, it is not part of the Subject Property that is the subject of this appeal.

distinction requires adherence to the Historic Resources Protection Standards in Section 1298.19(d)(1)[6] of the Ordinance.

On June 8, 2017, Applicants submitted a request for a special exception to the Ordinance for reduced dimensional regulations in exchange for not demolishing the Manor Home.[7] F.F. Nos. 38-39. The Subject Property is located within the A-Residential Zoning District, which permits lots that are 40,000 square feet in size. Applicants submitted an application for special exception for reduced area and bulk regulations. The A-Residential Zoning District includes single-family homes as a permitted use. Applicants submitted a proposed 7-lot plan of single-family homes for the Subject Property (the Plan). The Plan included the 2.3-acre Manor Home lot, which will be preserved for the purpose of Applicants' family's primary residence. The Plan estimates the location of a possible internal road connecting the Subject Property to the bend where Johns Lane and Susquehanna Road meet, which abuts the Subject Property. F.F. No. 67.

Public zoning hearings were held on the application for special exception on May 14, 2017; September 14, 2017; October 12, 2017; November 9, 2017; and December 21, 2017. At the hearings, Applicants presented testimony from Mark Altrogee, P.E., a civil design engineering expert. Mr. Altrogee assessed that if a subdivision and land development plan for the Subject Property was to be

---

[6] "Instead of demolition of an historic resource, a landowner or developer may be allowed to reduce the otherwise applicable area and bulk regulations." Ordinance §1298.19(d)(1).

[7] Applicants initially submitted a request for a variance for the 777 Johns Lane property alongside the request for a special exception for the Subject Property. Applicants later amended the application to include only a request for a special exception for the Subject Property. Accordingly, we only consider the Subject Property on appeal.

3

pursued in the future, then the use of the bend at Johns Lane and Susquehanna Road would be a suitable location for access to the Subject Property. F.F. No. 68.

Objector presented testimony from a civil design engineering expert, Jeffrey Wert, P.E. Mr. Wert asserted that Applicants failed to satisfy the criteria for the grant of a special exception; that granting the special exception would result in violating applicable provisions of the Ordinance; and that granting the special exception will create a detriment to public health, safety, and welfare. F.F. No. 74. Mr. Wert admitted that nothing submitted by Applicants constitutes a final plan. F.F. No. 64.

The ZHB rejected as not credible "any and all testimony" offered by Mr. Wert. F.F. No. 74. The ZHB also found that Objector's "lay-person testimony" was not credible and was impeached by her own conduct, including "repeated placement of cones" and recurring "yard sales" at the bend location where Johns Lane and Susquehanna Road meet. F.F. No. 80. The ZHB further concluded that the "ability to visually observe the demeanor of [Objector's expert and Objector] in the process of delivering that testimony" contributed to the ZHB's rejection of Objector's evidence. F.F. Nos. 75, 80.

The ZHB, finding no evidence of unsafe traffic conditions or substantial effects on the health, safety, and welfare of the community, granted Applicants' request for a special exception. Objector appealed, and the trial court affirmed the decision of the ZHB.

## II.    Discussion

### A. MPC Section 912.1 and Ordinance §1252.03(a)

On appeal,[8] Objector argues that the ZHB abused its discretion and committed errors of law by violating the statutory mandate of MPC Section 912.1.[9] The MPC requires that the ZHB decide special exception requests in accordance with the express standards outlined in Section 1252.03 of the Ordinance. Objector asserts that plans provided by Applicants were insufficient to support approval of the special exception. Objector also contends that the ZHB failed to consider the effect of the proposed special exception on existing public service systems and on the neighborhood.

---

[8] When, as here, a trial court accepts no additional evidence, "our review is limited to considering whether the zoning hearing board erred as a matter of law or abused its discretion." *S. of S. St. Neighborhood Ass'n v. Phila. Zoning Bd. of Adjustment*, 54 A.3d 115, 119 n.1 (Pa. Cmwlth. 2012). "An abuse of discretion occurs when the findings of the [ZBA] are not supported by substantial evidence." *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hr'g Bd.*, 102 A.3d 549, 553 n.6 (Pa. Cmwlth. 2014).

[9] Section 912.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10912.1 states:

> Zoning Hearing Board's Functions; Special Exception.
> Where the governing body, in the zoning ordinance, has stated special exceptions to be granted or denied by the board pursuant to express standards and criteria, the board shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the board may attach such reasonable conditions and safeguards, in addition to those expressed in the ordinance, as it may deem necessary to implement the purposes of this act and the zoning ordinance.

A special exception is not an exception to the zoning ordinance, but a use permitted conditionally, and the application is to be granted or denied by the ZHB pursuant to express standards and criteria. *Shamah v. Hellam Twp. Zoning Hearing Bd.*, 648 A.2d 1299 (Pa. Cmwlth. 1994). Where a particular use is permitted in a zone by special exception, it is presumed that the local legislature has already considered that such use satisfies local concerns of the general health, safety, and welfare and that such use comports with the intent of the zoning ordinance. *Id.* If an applicant can show compliance with the specific requirements of the ordinance for a special exception, it is presumed that the use is consistent with the promotion of the health, safety, and general welfare. *Bray v. Zoning Bd. of Adjustment*, 410 A.2d 909 (Pa. Cmwlth. 1980).

Objector argues that Applicants did not demonstrate that compliance with the permitted uses of the Ordinance would be unreasonable or inappropriate.[10] Objector further questions the rationale of the ZHB, stating that the Plan submitted by Applicants was insufficient to meet their burden of demonstrating a need for a special exception. However, the ZHB found that "the plans and other evidence provided by the Applicants were sufficient to establish compliance with the permitted uses and other regulations … applicable to the special exception requested …." F.F. No. 71(h).

The Applicants, with the assistance of Applicants' expert, produced the Plan as an illustrative depiction of one possible subdivision plan to demonstrate

---

[10] Section 1252.03(a)(6) of the Ordinance states: "The applicant shall provide the [ZHB] with sufficient plans, studies or other data to demonstrate that compliance with the permitted uses or other regulations, as may be the subject of consideration for a special exception approval, is unreasonable or inappropriate for the instance at hand." Ordinance §1252.03(a)(6).

6

reduced criteria, provided the special exception was granted. F.F. No. 53. The Plan is not fully engineered or to the standards of a subdivision or land development application. F.F. Nos. 54-55. The Ordinance does not require that any subdivision, land development application, building application, or any other permit application be submitted prior to submission of the appeal requesting a special exception for reduced criteria pursuant to the Ordinance. F.F. No. 58.

The ZHB, as fact finder, is the ultimate judge of credibility and resolves all conflicts of evidence. *In re Appeal of Brickstone Realty Corp.*, 789 A.2d 333 (Pa. Cmwlth. 2001). Section 1252.03(6) of the Ordinance requires "sufficient plans" to support an application for special exception. The ZHB determined that the Plan provided by Applicants met this sufficiency standard. The ZHB acted within its discretion to determine the credibility of the Plan and of Applicants and Applicants' expert. The ZHB found the evidence provided by Applicants to be more credible than the evidence provided by Objector. F.F. Nos. 75, 80. This credibility determination does not amount to an abuse of discretion or error of law on the part of the ZHB.

Similarly, Objector argues that the ZHB abused its discretion and committed an error of law by finding that Applicants complied with the requirements of Section 1252.03(a)(4) of the Ordinance.[11] Objector presented evidence regarding

---

[11] Section 1252.03(a)(4) of the Ordinance reads:

> The applicant shall establish, by credible evidence, that the proposed special exception or other subject of consideration for approval will be properly serviced by all existing public service systems. The peak traffic generated by the subject of the approval must be accommodated for in a safe and efficient manner, or improvements must be made in order to effect the same.

the current traffic conditions along Johns Lane. F.F. No. 76. Objector's lay testimony identified Johns Lane as "inherently unsafe," a characterization that the ZHB rejected as not credible. F.F. No. 80. No traffic engineer testified to the road conditions or general safety on Johns Lane. F.F. No. 79. The ZHB also concluded, based on the evidence of record, that the unsafe incidents that have occurred on Johns Lane are "related to speeding, driving under the influence, and other moving violations, and not caused by any inherently unsafe condition of the roadway." F.F. No. 78.

As stated above, the ZHB is the ultimate judge of credibility of evidence. *In re Appeal of Brickstone Realty Corp.*, 789 A.2d at 339. The ZHB found Objector's evidence as to the unsafe road conditions on Johns Lane not credible. In fact, the ZHB previously found "any and all testimony" from Objector's expert, Mr. Wert, not credible. F.F. No. 74. Additionally, Objector's testimony was impeached in part by her own conduct and acts of self-help, specifically "repeated placement of cones" at the bend indicated at the intersection of Johns Lane and Susquehanna Road. F.F. No. 80.

Not every anticipated increase in traffic will justify the refusal to grant a special exception. *Fantastic Plastic, Inc. v. Zoning Bd. of Adjustment of Pittsburgh*, 332 A.2d 577 (Pa. Cmwlth. 1975). To warrant a denial of a special exception, there must be "not only a likelihood, but a high degree of probability" that the traffic

---

Similar responsibility must be assumed with respect to other public service systems, including but not limited to police protection, fire protection, utilities, parks and recreation.

Ordinance §1252.03(a)(4).

increase would pose a substantial threat to the health and safety of the community. *Lower Southampton Twp. v. B.P. Oil Corp.*, 329 A.2d 535, 540 (Pa. Cmwlth. 1974).

While Objector argues that Applicants did not meet their burden under Section 1252.03(a)(4) of the Ordinance, the provision requires that, in addition to "peak traffic… [being] accommodated for in a safe and sufficient manner," the property that is the subject of a request for special exception must "[be] serviced by all existing public service systems." Ordinance §1252.03(a)(4). The Subject Property is capable of being served by public water and sewer. F.F. No. 35. Further, the ZHB found that the evidence presented at the hearings did not establish that any inherently unsafe traffic conditions exist along Johns Lane. F.F. No. 84. The ZHB appropriately exercised its discretion and found Applicants' evidence to be credible.

Objector also argues that the ZHB abused its discretion and committed errors of law because Applicants did not comply with the requirements of Section 1252.03(a)(3) of the Ordinance.[12] The examination of this provision was brief at both the ZHB and trial court, but the ZHB determined that no credible evidence was presented to show that granting the special exception requested will result in any greater impact upon the public interest beyond what might be expected as a result of the Subject Property's use absent the grant of the special exception requested. F.F.

---

[12] Section 1252.03(a)(3) of the Ordinance reads:

> The applicant shall establish, by credible evidence, that the proposed special exception or other subject of consideration for approval shall not adversely affect neighboring land uses in any way and shall not impose upon its neighbors in any way, but rather shall blend in with them in a harmonious manner.

Ordinance §1252.03(a)(3).

9

No. 87. As the determination of the credibility of evidence is the role of the ZHB, the ZHB was within its discretion to determine that the evidence presented satisfied Section 1252.03(a)(3).

## B. Historic Resource Protection Standards

Objector argues that because Applicants' request for a special exception to the Ordinance references only the Manor House, to the exclusion of the Additional Structures, the ZHB and the trial court erroneously ignored Section 1298.19(d)(1) of the Ordinance.[13] Specifically, Objector cites a disregard for "spatial

---

[13] Section 1298.19(d)(1) of the Ordinance reads:

> Instead of the demolition of an historic resource, a landowner or developer may (except in the case of a bed and breakfast application), as a special exception, be allowed to reduce the otherwise applicable area and bulk regulations, provided that all other zoning ordinance requirements related to the Flood Plain Conservation District are met. As a special exception, the [ZHB] may allow a reduction to the applicable area and bulk regulations, in the AA, AA-1, A, and A-1 Districts, provided that the historic resource meets or will be renovated to meet the standards in Subsection (g) below and is deed restricted (in a manner acceptable to the Township) to insure permanent protection from demolition and facade alteration (except with the written permission of the Township after a public hearing) for the historic resource lot, and further provided the following are met:
>     A. A lot area of not less than 18,000 square feet is provided for each lot and both public water and public sewer are available.
>     B. A lot width of not less than 85 feet at the building line is provided.
>     C. The front yard shall be not less than 25 feet.
>     D. The side yards shall be not less than 15 feet.
>     E. The rear yard shall be not less than 50 feet.
>     F. The total building coverage shall not exceed 25%.
>     G. The total impervious coverage shall not exceed 40%.

Ordinance §1298.19(d)(1).

relationship" and "rehabilitation" as sources of error for the ZHB and trial court.[14, 15] Objector asserts that because the proposed subdivision that would eventually result if the special exception is granted would destroy the spatial relationship between the historic resources, granting the special exception violates the Ordinance. Further, Objector argues that Applicants intend to rehabilitate the Additional Structures on the Subject Property, meaning that the trial court erred in disregarding the rehabilitation provision.

[14] "Rehabilitation" is defined within Section 1298.19(b)(11) of the Ordinance as "[t]he act or process of making possible a compatible use for a property through exterior repair, alterations, and additions while preserving those portions or features which convey its historical, cultural, or architectural values, in accordance with the use provisions of the Secretary of the Interior's Standards." Ordinance §1298.19(b)(11).

[15] Objector relies on "Subsection (g)" as referenced in Section 1298.19(d)(1) of the Ordinance in making arguments in regards to Applicants' alleged violation of the Historic Resource Protection Standards. The relevant portion of the Ordinance, Section 1298.19(g)(1)C, J reads:

> Any proposed change to a historic resource shall comply with the …Secretary of the Interior Standards, latest edition, adapted as follows:
> ….
> C. The historic character of historic buildings, structures, and sites shall be retained and preserved. The removal of distinctive materials or alteration of features, spaces, and spatial relationships that characterize a property shall be avoided. Historic building features such as porches, chimneys, and dormers shall not be demolished or modified to obscure their character.
> ….
> J. New additions, exterior alterations, or related new construction shall not destroy historic materials, features, and spatial relationships that characterize the property. The new work will be differentiated from the old and will be compatible with the historic materials, features, size, scale and proportion, and massing to protect the integrity of the property and its environment. Such new work shall not attempt to match the original design of the historic resource.

Ordinance §1298.19(g)(1)C, J.

11

Applicants requested a special exception for the Subject Property for the purpose of complying with Section 1298.19(d)(1) of the Ordinance. Applicants' request proposes a reduction in area and bulk regulations to continue to use the Subject Property as Applicants' primary residence. The request for special exception is based on the language of Section 1298.19(d)(1), which states that "instead of the demolition of a historic resource" a reduction in bulk and area regulations may be granted by application.

Objector argues that by granting the special exception, the ZHB has effectively allowed for a "removal of…spatial relationships" as prohibited by Section 1298.19(g) of the Ordinance. The term "spatial relationships" is not defined by the Ordinance and criteria is not outlined for compliance with this term. Applicants presented an illustrative plan to the ZHB to provide an example of future development that may be done at the Subject Property if the special exception is granted. The granting of the special exception does not immediately result in the 7-lot subdivision represented in the sample Plan. Therefore, while the special exception was granted, the ZHB did not authorize a development project in relation to the Subject Property. The special exception, even if in anticipation of a "proposed change to a historic resource," does not result in that change, which would implicate the "spatial relationships" provision. Ordinance §1298.19(d)(1), (g).

Objector further argues that in granting Applicants' request for a special exception, the ZHB ignored the "rehabilitation" provision of Section 1298.19(d)(1). Objector concedes that Applicants propose no rehabilitation or restoration of the Subject Property. F.F. No. 66. However, Objector asserts that Applicants' "intention to restore … and maintain" the "outbuildings" indicates that the ZHB was required to consider "rehabilitation" as a "proposed change" as described within the

12

Ordinance. Section 1298.19(g); Reproduced Record (R.R.) at 456a, 463a. Objector asserts that a change to the "outbuildings" must be considered when the ZHB decides whether to grant the special exception.[16]

While the evidence of record does contain references to Applicants' desire to restore the "outbuildings" on the Subject Property, this future restoration is not the subject of the application for special exception. Applicants submitted a request for special exception for relief from area and bulk regulations under Ordinance Section 1298.19(d)(1). Applicants did not seek this relief for the purpose of restoring the existing structures on the Subject Property. Therefore, the requirements of the rehabilitation provision do not apply.

### C. MPC Section 909.1(a)(6)[17] and the Historic Overlay Concept

Objector argues that the ZHB inappropriately delegated its exclusive authority to grant special exceptions under Section 909.1(a)(6) of the MPC, 53 P.S. §10909.1(a)(6) to the Township Board of Supervisors (BOS), a municipal governing body. Objector asserts that the Subdivision and Land Development Ordinance

---

[16] While Objector cites future improvements to the Additional Structures to require Applicants to comply with Section 1298.19(d)(1) of the Ordinance, Objector raised the issue of preservation of the Additional Structures at oral argument before this Court. Although the Additional Structures are not depicted in the Plan, Applicants indicated "an intention to restore… and maintain [these buildings] as part of their homestead." R.R. at 463a.

[17] Section 909.1(a)(6) of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. §10909.1(a)(6) states: "The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters: … (6) Applications for special exceptions under the zoning ordinance or flood plain or flood hazard ordinance or such provisions within a land use ordinance, pursuant to section 912.1."

(SALDO), as described in Section 1298.19(e) of the Ordinance,[18] must be considered when deciding whether to grant the application for a special exception. Objector acknowledges that the Ordinance refers to only "applicable requirements," but asserts that provisions of the SALDO apply to Applicants' application for a special exception.

The Ordinance does not define what "otherwise applicable requirements of the SALDO" describes. SALDO Section 1230.04 states that the SALDO applies only to a "subdivision or land development." Applicants have yet to pursue a subdivision plan, with Objector's expert admitting that the illustrative Plan provided with the special exception application does not constitute a final plan for the purposes of development. F.F. No. 64. Further, as it relates to development permitting, the SALDO is administered by the Township BOS, not the ZHB.

Objector argues that because the ZHB did not enforce Section 1298.19(e) of the Ordinance, but instead deferred to the authority of the Township BOS, it abused its discretion and committed errors of law. The ZHB did not defer the SALDO to the Township BOS as an exercise of discretion; instead, the ZHB appropriately identified that the Township BOS is the source of authority for land development permits within Lower Gwynedd Township.

---

[18] Ordinance Section 1298.19(e) states: "Historic overlay concept. For any property shown on the Historic Resource Map, when the property owner chooses to pursue a special exception, the requirements of this section shall apply, in addition to the otherwise applicable requirements of the Subdivision and Land Development Ordinance, and the underlying zoning district regulations." Ordinance §1298.19(e).

The ZHB further supported its finding that its role is not that of the Township BOS, citing *Smith v. Zoning Hearing Bd. of Huntingdon Borough*: "The basis for the judicial deference is the knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is charged with administering." 734 A.2d 55, 58 (Pa. Cmwlth. 1999) (citing *Willits Woods Associates v. Zoning Bd. of Adjustment of City of Philadelphia*, 587 A.2d 827 (Pa. Cmwlth. 1991)). The ZHB interprets the SALDO to both not apply to Applicants' request for special exception and to be an ordinance administered by another authority, the Township BOS.

## III. Conclusion

At issue in this appeal is whether the ZHB committed an error of law or abused its discretion in granting Applicants a special exception to the Ordinance. The requested special exception allows for reprieve from dimensional requirements for lot size as outlined in the Ordinance.

When interpreting the terms of a local zoning ordinance, any doubt must be resolved in favor of the landowner and the least restrictive use of the land. *Borough of Fleetwood v. Zoning Hearing Bd. of Borough of Fleetwood*, 649 A.2d 651, 657 (Pa. 1994). The ZHB's interpretation of the Ordinance favors Applicants, the landowners, providing the least restrictive process for obtaining a special exception. The ZHB acted within its discretion when it found that Applicants provided credible evidence to demonstrate that compliance with the Ordinance was

15

inappropriate or unreasonable and that a special exception should be granted for the Subject Property.  For the above reasons, we affirm.


_____
J. ANDREW CROMPTON, Judge


Judge Cohn Jubelirer did not participate in the decision of this case.


16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Appeal of Joanne Lesko From the Decision :
Dated June 14, 2018 of the Lower Gwynedd :
Township Zoning Hearing Board :
                                   :       No. 532 C.D. 2019
Appeal of: Joanne Lesko :

# **O R D E R**

      **AND NOW**, this 9th day of July 2020, we **AFFIRM** the order of the

Court of Common Pleas of Montgomery County.

_____
J. ANDREW CROMPTON, Judge