Jason Hoekstra and Joanna Hoekstra, : 
                       Appellants : 
                                  :
            v.                    :
                                    :
Amity Township Zoning Hearing : 
Board, Amity Township, and 422 : No. 723 C.D. 2023
Properties, L.P. : Submitted: February 4, 2025

BEFORE:   HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                               FILED: March 18, 2025

         Jason Hoekstra and Joanna Hoekstra (collectively, Appellants) appeal from the Berks County Common Pleas Court's (trial court) June 8, 2023 order denying their appeal from the Amity Township (Township) Zoning Hearing Board's (ZHB) November 1, 2022 decision that granted NorthPoint Development LLC's (NorthPoint) application for variances (Application) from Sections 32-504(c)-(e) and 32-505(c)-(e) of the Township's Zoning Ordinance (Ordinance),[1] Ord. §§ 32-504(c)-(e) (relating to the High Water Table Overlay District (HWTOD)), 32-505(c)-(e) (relating to the Steep Slope Overlay District (SSOD)), for Parcel Nos. 24-5364-15-63-5787 and 24-5364-15-54-7345 located in the Township at 1375 Benjamin Franklin Highway, Douglassville, Berks County, Pennsylvania

---

[1] Township of Amity, Pa., Zoning Ordinance of 1968, as comprehensively amended by Ordinance No. 130 (Dec. 9, 1991, *as amended*).

(Property).  Appellants present one issue for this Court's review: whether the ZHB erred as a matter of law and/or abused its discretion by granting the variances.  After review, this Court affirms.

The Property, which is located in the Township's Light Industrial/Office (LI/O) Zoning District and the Route 422 Overlay District consists of two contiguous, unimproved parcels (Parcel/collectively, Parcels) totaling 100.19 acres, bordered by Township Line Road, Toll Gate Road, Route 422/Benjamin Franklin Highway, and Route 662.[2]  The Property's owner, 422 Properties, L.P. (422 Properties), purchased the Property in 2000 and has since worked with the Pennsylvania Department of Transportation (PennDOT), the Pennsylvania Department of Environmental Protection (DEP), and the Township to develop the Property and related access roads.[3]  Appellants, husband and wife, live at 71 Township Line Road in Douglasville, Douglass Township, which is across the street from the Property.[4]

On December 20, 2021, 422 Properties entered into an agreement to sell the Property to Northpoint that gave NorthPoint until December 15, 2022, to conduct due diligence and obtain approvals necessary to develop the Property for warehousing.  As the Property's equitable owner,[5] on October 3, 2022, NorthPoint

---

[2] Although unimproved, the Pennsylvania Department of Transportation previously used the Property in connection with a Route 422 improvement project.

[3] Since 2000, 422 Properties' work included crushing existing, enormous concrete slabs and stockpiling dirt for future development.  In addition, PennDOT has undertaken condemnations to realign existing roads for the Property's development and create a comprehensive road network for other future projects in this quadrant of the Township.

[4] The Township's boundary line runs down the middle of Township Line Road.  Half the road is in the Township, and the other half is in Douglass Township.

[5] Under Pennsylvania law, "[e]xecution of a contract for the sale of realty vests equitable title to the realty in the purchaser.  The seller retains legal title only as a security against the purchase price." *Posel v. Redevelopment Auth. of the City of Phila.*, 456 A.2d 243, 246 n.4 (Pa. Cmwlth. 1983) (citations omitted).  Accordingly, "an equitable owner under a conditional contract to purchase stands in the same position as a legal owner in seeking a variance for the same

2

applied to the ZHB for variances from Sections 32-504(c)-(e) and 32-505(c)-(e) of the Ordinance to construct a warehouse/logistics center (Amity Logistic Center) consisting of two warehouses - 708,000 square feet and 207,000 square feet - with roadway/intersection improvements, buildings, parking and loading, and stormwater management facilities.[6]  *See* Reproduced Record (R.R.) at 189a.[7]  Although warehouse and wholesale/distribution facilities are uses permitted by right in the Township's LI/O Zoning District and Route 422 Overlay District,[8] they are not permitted in the HWTOD and SSOD.  *See* Ord. §§ 32-504(c)-(e), 32-505(c)-(e) (R.R. at 267a-268a).  NorthPoint's proposed project is compliant with all other applicable Ordinance requirements.  *See* R.R. at 70a, 108a.

The ZHB conducted a hearing on the Application on October 24, 2022, at which NorthPoint offered the testimony of its project development manager Thomas P. Williams, III (Williams), 422 Properties' general manager Joseph F. Tornetta (Tornetta), and licensed civil engineer Donald A. Haas (Haas).  Appellants also appeared at the ZHB hearing, requested and were granted party status, and questioned NorthPoint's witnesses.  *See* R.R. at 46a, 249a.  Both the Township's Planning Commission and its Board of Supervisors recommended that the ZHB grant the variances.  On November 1, 2022, the ZHB granted the Application,

---

purpose." *Logan Square Neighborhood Ass'n v. Zoning Bd. of Adjustment of the City of Phila.*, 379 A.2d 632, 634 (Pa. Cmwlth. 1977) (quoting *O'Neill v. Phila. Zoning Bd. of Adjustment*, 120 A.2d 901, 905 (Pa. 1956)).

[6] NorthPoint also sought a variance from Section 32-924(b)(15) of the Ordinance, Ord. § 32-924(b)(15) (relating to parking lot landscaping), but later withdrew that request.

[7] Pennsylvania Rule of Appellate Procedure (Rule) 2173 specifies: "[T]he pages of . . . the reproduced record . . . shall be numbered separately in Arabic figures . . . thus 1, 2, 3, etc., followed in the reproduced record by a small a, thus 1a, 2a, 3a, etc." Pa.R.A.P. 2173.  Appellants' Reproduced Record page numbers are not followed by a small a.  Pursuant to Rule 2173, this Court will refer to the Reproduced Record pages as Appellants numbered them, but followed by a small a.

[8] *See* Section 32-407(b)(8)-(9) of the Ordinance, Ord. § 32-407(b)(8)-(9) (R.R. at 55a, 261a), Section 32-507(b)(16) of the Ordinance, Ord. § 32-507(b)(16) (R.R. at 269a-270a).

3

thereby approving variances from Sections 32-504 and 32-505 of the Ordinance to allow NorthPoint's development to encroach upon areas of the Property under the HWTOD and SSOD, subject to compliance with the exhibits and testimony NorthPoint presented at the hearing.

On November 29, 2022, Appellants appealed from the ZHB's decision to the trial court. The Township and 422 Properties intervened. On April 28, 2023, NorthPoint filed a praecipe to withdraw from the appeal because its equitable ownership in the Property terminated on December 15, 2022, and it no longer had an interest therein. However, 422 Properties opted to proceed to obtain the variances.[9] After briefing and argument, but without taking any additional evidence, on June 8, 2023, the trial court denied Appellants' appeal.[10] Appellants appealed to this Court.[11]

---

[9] The right to variance relief is not specific to the applicant but, rather, runs with the land. *See Nowicki v. Zoning Hearing Bd. of Borough of Monaca*, 91 A.3d 287 (Pa. Cmwlth. 2014).

[10] On April 3, 2023, Appellants filed a petition to supplement the record (petition) on the basis that the ZHB prohibited them from asking questions related to impacts the proposed project at the Property would have on the essential character of the neighborhood (i.e., related to traffic, lighting, and noise). Indeed, "[a] trial court faces compulsion to hear additional evidence in a zoning case only where the party seeking the hearing demonstrates that the record is incomplete because the party was denied the opportunity to be heard fully, or because relevant testimony was offered and excluded." *Berryman v. Wyoming Borough Zoning Hearing Bd.*, 884 A.2d 386, 388 n.2 (Pa. Cmwlth. 2005). The Township and 422 Properties opposed the petition, asserting that since the warehouse use was permitted in the LI/O Zoning District and Route 422 Overlay District, issues of traffic, lighting, and noise are irrelevant to the Application limited to the HWTOD and SSOD. The Township and 422 Properties made that fact clear during the ZHB hearing. *See* R.R. at 93a-94a, 108a. Appellants questioned NorthPoint's witnesses regarding construction entrances and the culvert, and they were permitted to present evidence. *See* R.R. at 42a, 54a, 75a-76a, 146a-150a. Appellants did not offer evidence specifically related to the HWTOD and SSOD. The trial court denied the petition, declaring that the "matter will be decided on the record as it currently exists, without the taking of further evidence or testimony." Original Record (O.R.) Item 19.

[11] "When [the trial court] takes no additional evidence, [this Court] must limit [its] review to whether the ZHB 'committed an abuse of discretion or an error of law.'" *Plum Borough v. Zoning Hearing Bd. of Borough of Plum*, 310 A.3d 815, 823 (Pa. Cmwlth. 2024) (quoting *Harrisburg Gardens, Inc. v. Susquehanna Twp. Zoning Hearing Bd.*, 981 A.2d 405, 410 (Pa. Cmwlth. 2009)). "[This Court] appl[ies] this deferential standard of review because [it] do[es] not

On August 31, 2023, the trial court directed Appellants to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Appellants filed their Rule 1925(b) Statement on September 15, 2023. On November 17, 2023, the trial court issued its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).

Initially, according to Section 504(b)(1) of the Ordinance, an HWTOD exists in

> all areas subject to inundation of soils which are characteristic and categorized as being alluvial and/or as high water table soils by the Soil Survey of Berks County, Pennsylvania prepared by the United States [(U.S.)] Department of Agriculture (Soil Conservation Service)[12] in cooperation with the Pennsylvania State University and Pennsylvania Department of Agriculture.

Ord. § 32-504(b)(1) (R.R. at 266a). Alluvial and high water table soils[13] include Readington soil[14] known to exist in the Township. *See* Ord. § 32-504(b)(4) (R.R. at 266a); *see also* R.R. at 78a.

---

sit as 'a super [zoning hearing board]' and thus '[t]he necessity must be clear before there is justification for judicial interference with the municipality's exercise of its zoning power.'" *Id.* (quoting *Robert Louis Corp. v. Bd. of Adjustment of Radnor Twp.*, 274 A.2d 551, 555 (Pa. Cmwlth. 1971)).

The ZHB joins in the Township's brief.

[12] The Soil Conservation Service is now known as the Natural Resources Conservation Service.

[13] *Alluvial soils* are "soils which have been formed in alluvium and deposited in the past by stream or flooding conditions. The presence of these soils is a reliable indication that heavy runoff conditions will probably create flooding in the future." Ord. § 32-504(b)(2) (R.R. at 266a); *see also* Ord. § 32-202. *High water table soils* are "surface soils which are within three feet of the seasonable high water table as described and identified by the [U.S.] Department of Agriculture in the Soil Survey of Berks County." Ord. § 32-504(b)(3) (R.R. at 266a); *see also* Ord. § 32-202.

[14] Neither the parties nor the Ordinance specifically define *Readington soils*; however, the U.S. Department of Agriculture's official websites reflects: "The Readington series consists of deep and very deep, moderately well drained soils formed in medium textured residuum weathered from noncalcareous shale, siltstone, and fine-grained sandstone." soilseries.sc.egov.usda.gov/OSD_Docs/R/READINGTON.html (last visited Mar. 17, 2025). This

Section 505(b)(1) of the Ordinance specifies that an SSOD

> include[s] all areas where the topography exceeds 25% in slope in pre-development conditions. The Township, through the collaboration, implementation[,] and adoption of the Township Comprehensive Plan has conducted a Topographical Analysis of the Township. As part of this Topographical Analysis, a Slope Map was incorporated to illustrate and highlight relative areas with slopes less than 15%; between 15% and 25%; and greater than 25%.

Ord. § 32-505(b)(1) (R.R. at 268a). The SSOD applies to the Property because it has steep slopes in certain areas. *See* R.R. at 76a.

Because a warehouse is a use not permitted by right, by conditional use, or by special exception in the HWTOD and SSOD, *see* Ord. §§ 32-504(c)-(e) (R.R. at 267a), 32-505(c)-(e) (R.R. at 268a), variances from those overlays are necessary for the Property's proposed development. Section 32-1105(a) of the Ordinance specifies:

> The [ZHB] shall hear requests for variances where it is alleged that the provisions of this chapter inflict unnecessary hardship upon the applicant. In granting any variance[,] the [ZHB] may attach such reasonable conditions and safeguards as it may deem necessary to implement the purposes of this chapter and the Pennsylvania Municipalities Planning Code [(MPC)], as amended.[15] . . . In all cases, the [ZHB] shall request the [Township's] Board of Supervisors and [] Planning Commission to review and comment on the application prior to rendering a decision. The [ZHB] may grant a variance provided that all [of] the following findings are made where relevant in a given case:

_____

Court may take judicial notice of public policies and procedures on official government websites. *See Hill v. Dep't of Corr.*, 64 A.3d 1159 (Pa. Cmwlth. 2023). "[Pennsylvania Rule of Evidence] 201([d]) [ ] permits a court to take judicial notice at any stage of a proceeding, including the appellate stage[.]" *Berman v. Pa. Convention Ctr. Auth.*, 901 A.2d 1085, 1088 (Pa. Cmwlth. 2006).

[15] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101-11202.

(1) That there are unique physical circumstances or conditions, including irregularity, narrowness or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such condition, and not circumstances or conditions generally created by the provisions of this chapter in the neighborhood or district in which the property is located;

(2) That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of this chapter and that the authorization of a variance is therefore necessary to enable the reasonable use of the property;

(3) That such unnecessary hardship has not been created by the appellant [sic];

(4) That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; [and]

(5) That the variance as granted by the [ZHB] is the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.[16]

Ord. § 32-1105(a) (R.R. at 276a).

An applicant carries the heavy burden of proving each of the variance criteria. *See RDM Grp. v. Pittston Twp. Zoning Hearing Bd.*, 311 A.3d 1216 (Pa. Cmwlth. 2024). Because variances are to be sparingly granted and only under exceptional circumstances, "the reasons for granting the variance must be

---

[16] Ordinance Section 32-1105(a)'s criteria are nearly identical to the variance requirements set forth in Section 910.2 of the MPC, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

'substantial, serious, and compelling.'" *Id*. at 1225 (quoting *Singer v. Phila. Zoning Board of Adjustment*, 29 A.3d 144, 148 (Pa. Cmwlth. 2011)). Moreover, "[t]he [zoning hearing b]oard has no discretion to grant a variance unless it finds that *all* of the above-enumerated conditions are met." *Doris Terry Revocable Living Tr. v. Zoning Bd. of Adjustment of the City of Pittsburgh*, 873 A.2d 57, 62 (Pa. Cmwlth. 2005); *see also* Ord. § 32-1105(a).

Appellants argue that the ZHB erred as a matter of law and/or abused its discretion by granting the variances. In particular, they claim that NorthPoint/422 Properties failed to satisfy the requirements of Section 32-1105(a)(1) of the Ordinance (unnecessary hardship due to the Property's unique physical conditions and not the Ordinance's general application) and (a)(3) (the unnecessary hardship was not created by NorthPoint). More specifically, Appellants declare, *inter alia*, that the proposed use is contrary to the HWTOD's and SSOD's intentions, the HWTOD's and SSOD's restrictions are not unique to the Property because they impact the vast majority of the properties in the LI/O Zoning District, and the physical characteristics causing the Property to fall under the HWTOD and SSOD may not be the basis to support a finding of unique physical circumstances to support a variance. Appellants also claim that the ZHB erred by concluding that NorthPoint/422 Properties presented substantial evidence to satisfy *all* of the variance criteria set forth in Section 32-1105 of the Ordinance (All Variance Criteria Issue), and separately as to each Parcel (Separate Parcel Issue).

The Township and 422 Properties retort that NorthPoint presented substantial evidence satisfying each of the variance criteria and, thus, the ZHB properly granted the Application. 422 Properties adds that, by not expressly including their All Variance Criteria and Separate Parcel Issues in their Rule 1925(b) Statement and failing to develop arguments thereon with supporting legal authority

8

pursuant to Rule 2119(a) in their brief to this Court, Appellants waived those challenges. *See* 422 Properties Br. at 10, 31-34.

**Waiver**

Preliminarily, Rule 1925(b)(4)(ii) provides, in relevant part: "The [Rule 1925(b)] Statement shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). Here, the trial court's August 31, 2023 order directing Appellants to file their Rule 1925(b) Statement stated: "Any issue not included in a timely filed and served [Rule 1925(b) Statement] shall be deemed waived." R.R. at 5a; *see* Pa.R.A.P. 1925(b)(3)(iv); *see also 770 Ameribeer, Inc. v. Pa. Liquor Control Bd.*, 318 A.3d 998 (Pa. Cmwlth. 2024). "The function of the [Rule 1925(b) S]tatement is to clarify for the judge who issued the order the grounds on which the aggrieved party seeks appellate review - so as to facilitate the writing of the opinion." *Commonwealth v. Rogers*, 250 A.3d 1209, 1224 (Pa. 2021). It is axiomatic that a trial court cannot conduct a review and issue a meaningful Rule 1925(a) opinion if it is left to guess the issues an appellant intends to challenge on appeal. *See Commonwealth v. Dowling*, 778 A.2d 683 (Pa. Super. 1981).

In this case, Appellants declared in their Rule 1925(b) Statement that the ZHB wrongfully:

> 1. As to Parcel [] No[.] 24-5364-15-63-5787, determined that [NorthPoint/422 Properties] before the [ZHB] met its burden to prove an entitlement to the variances requested by [NorthPoint/422 Properties], under the criteria set forth within Section[] 32-1105(a)(1), (2), (3), (4), and (5) of the Ordinance.
>
> 2. As to Parcel [] No[.] 24-5364-15-54-7345, determined that [NorthPoint/422 Properties] before the [ZHB] met its burden to prove an entitlement to the variances requested by [NorthPoint/422 Properties], under the criteria set forth

9

within Section[] 32-1105(a)(1), (2), (3), (4), and (5) of the Ordinance.

3. Determined that [NorthPoint/422 Properties] before the [ZHB] met its burden to prove an entitlement to the variances even though the use proposed by [NorthPoint/422 Properties] is contrary to the intent of the Ordinance; including, Sections 32-501, 32-504[,] and 32-505 of the Ordinance[, Ord. §§ 32-501, 32-504, 32-505].

R.R. at 3a-4a.

Appellants' Rule 1925(b) Statement does not expressly raise the Separate Parcel Issue. However, Rule 1925(b)(4)(v) provides: "Each error identified in the [Rule 1925(b)] Statement will be deemed to include every subsidiary issue that was raised in the trial court[.]" Pa.R.A.P. 1925(b)(4)(v). Because Appellants raised the Separate Parcel Issue in their brief to the trial court,[17] *see* Original Record (O.R.) Item 8 (Appellants' Trial Court Br.) at 5, their distinct references to each separate Parcel in their Rule 1925(b) Statement are sufficient for this Court to

---

[17] The trial court did not specifically rule on Appellants' Separate Parcel Issue in its Rule 1925(a) Opinion; rather, the trial court declared that it would "focus only on the issues raised by Appellants in their [Rule 1925(b) Statement], as all other issues have been waived." Rule 1925(a) Op. at 3. Despite that the trial court did not specifically analyze Appellants' Separate Parcel Issue, it nevertheless concluded that the ZHB did not deviate from the prescribed formula for reviewing variance requests. *See* Rule 1925(a) Op. at 9.

Notably, when NorthPoint's counsel confirmed at the ZHB hearing that the Property consisted of two Parcels owned by NorthPoint, but thereafter presented the evidence from the perspective of "tak[ing] a look at the [P]roperty as a whole[,]" R.R. at 56a, Appellants did not object. "Where, as here, a full and complete record of the proceedings was made before a zoning hearing board, a party in an appeal to the trial court may not raise issues not raised before the [zoning hearing] board, unless allowed by the [trial] court upon due cause shown." *Teazers, Inc. v. Zoning Bd. of Adjustment of City of Phila.*, 682 A.2d 856, 858 (Pa. Cmwlth. 1996); *see also* Section 753(a) of the Local Agency Law, 2 Pa.C.S. § 753(a); *Seneca Min. Co. v. McKean Twp. Zoning Hearing Bd.*, 556 A.2d 496 (Pa. Cmwlth. 1989). Despite that NorthPoint/422 Properties raised Appellants' waiver to the trial court, *see* O.R. Item 13 at 8-9, the trial court did not specifically rule on it. 422 Properties did not again raise that waiver issue to this Court, and this Court may not raise it sua sponte. *See Russell Mins. Fayette, Inc. v. Zoning Hearing Bd. of Fayette Cnty.*, 634 A.2d 836, 838 n.1 (Pa. Cmwlth. 1993) ("An appellate court may not sua sponte address an issue not raised by counsel, because it deprives counsel of the right to brief and argue the issues and it also deprives the court of the benefit of counsel's advocacy.").

conclude that the Separate Parcel Issue is a subsidiary issue to be considered in this appeal. Further, this Court is also reluctant to find a waiver where, as in this case, the trial court's order did not specify the basis for its decision.[18] Under these circumstances, this Court concludes that Appellants did not waive their Separate Parcel Issue by failing to expressly raise it in their Rule 1925(b) Statement.

Regarding the All Variance Criteria Issue, Appellants clearly referenced each of the variance criteria in Section 32-1105(a) of the Ordinance in their Rule 1925(b) Statement. Section 32-1105(a) of the Ordinance authorizes the ZHB to grant a variance only if it made findings on "all the" variance criteria therein. Ord. § 32-1105(a) (R.R. at 276a). Moreover, the law is well settled that the ZHB's function is "to determine whether the evidence satisfies the criteria for granting a variance[,]" *Marshall v. City of Phila.*, 97 A.3d 323, 331 (Pa. 2014), and it abuses its discretion by "fail[ing] to make findings based upon substantial evidence supporting all of the applicable criteria." *Coyle v. City of Lebanon Zoning Hearing Bd.*, 135 A.3d 240, 245 (Pa. Cmwlth. 2016). Thus, where, as here, the issue of whether the ZHB addressed *all* of the variance criteria underlies the ultimate issue, it is at the very least a subsidiary issue that Appellants raised to the trial court.[19] *See*

_____

[18] This Court has also observed that "Rule[] [1925(b)] provide[s] a mechanism to file a generalized statement of errors complained of on appeal when the basis for the trial court's decision is not readily discernable from the record," *Paluch v. Beard*, 182 A.3d 502, 507 (Pa. Cmwlth. 2018), such as when, as in this case, the trial court's order merely states: "[U]pon consideration of the [a]ppeal, filed by [Appellants], from the [ZHB's d]ecision . . . , any responses thereto[,] and after a hearing, the [trial c]ourt hereby ORDERS that the [a]ppeal is DENIED." Appellants' Br. Ex. B. The Pennsylvania Supreme Court has ruled: "When one seeking to appeal has no basis in the record to discern the basis for the order being challenged, [Rule] 1925(b) must **not** be employed as a trap to defeat appellate review, requiring specifically stated challenges to the resolution of issues before there has been any revelation as to how the issues have been resolved." *Ryan v. Johnson*, 564 A.2d 1237, 1239 (Pa. 1989) (emphasis added).

[19] Although the trial court did not specifically rule on Appellants' All Variance Criteria Issue in its Rule 1925(a) Opinion, it concluded that the ZHB did not deviate from the prescribed formula for reviewing variance requests and further adopted the ZHB's decision that

11

O.R. Item 8 at 15-16.  Further, because NorthPoint addressed each variance criteria at the ZHB hearing and the parties briefed all of the criteria in their arguments to the trial court, the trial court did not have to guess that Appellants challenged the All Variance Criteria Issue on appeal.  Accordingly, this Court concludes that Appellants did not waive their All Variance Criteria Issue by failing to expressly raise it in their Rule 1925(b) Statement.

Moreover, regarding Appellants' purported briefing errors, Rule 2119(a) specifies: "The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part . . . the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent."  Pa.R.A.P. 2119(a).  Appellants clearly included the issue of whether the ZHB addressed all of the Ordinance's variance criteria in their brief with a separate heading, discussion, and record citations.  *See* Appellants' Br. at 21.  Therefore, because Appellants did not violate Rule 2119(a), they did not waive the All Variance Criteria Issue on that basis.

Relative to the Separate Parcel Issue, Appellants represent in their brief to this Court that all of their separately divided arguments "may be applied to each lot separately, or to the Property collectively."  Appellants' Br. at 7.  Thus, although Appellants did not thereafter supply a separately divided argument on the Separate Parcel Issue in their brief to this Court, they sufficiently addressed it for purposes of this Court's analysis.  Accordingly, because Appellants did not violate Rule 2119(a), they did not waive the Separate Parcel Issue on that basis.

---

NorthPoint's/422 Properties' evidence satisfied each of the variance criteria.  *See* Rule 1925(a) Op. at 9-10.

**Variance Criteria**

At the outset, relative to Appellants' Separate Parcel Issue, the record reflects that 422 Properties and, by extension, NorthPoint, acquired the two Parcels that make up the Property by two separate deeds with separate descriptions from two separate grantors and, based on their two distinct tax numbers, taxes for each are separately calculated. *See* R.R. at 167a-177a. Although, in the Application, NorthPoint only specified Parcel No. 24-5364-15-63-5787 as the location of the Property under consideration, *see* R.R. at 189a, as stated above, NorthPoint made clear at the ZHB hearing that both Parcels were under review. The ZHB did not make separate findings of fact and/or credibility determinations as to each Parcel.

Neither the Ordinance, nor Section 910.2(a) of the MPC, 53 P.S. § 10910.2(a), specify whether variance criteria must be applied to each parcel forming a property for which a variance is sought, and Appellants do not offer any legal authority for such a position. Moreover, Section 32-1105(a) of the Ordinance uses the terms *property* and *lot* interchangeably, Section 32-202 of the Ordinance[20] does not define the term *property*, and the definition of *lot* therein provides little guidance:

> A tract or parcel of land, regardless of size, held in single or joint ownership, not necessarily a lot or lots shown on a duly recorded map, which is occupied or capable of being occupied by buildings, structures[,] and accessory buildings, including such open spaces as are arranged, designed[,] or required. The term "lot" shall also mean parcel, plot, site[,] or similar term.

Ord. § 32-202.

However, this Court has explained:

> [A]ppellate courts reviewing a governing body's adjudication of a [variance] application generally should defer to the interpretation rendered by the governing body. *See Smith v. Zoning Hearing Bd.*, 734 A.2d 55, 57 (Pa.

[20] The complete Ordinance is included in the Original Record without an Item Number.

13

Cmwlth. [(1999)]) . . . . "[A]s the entity charged with administering a zoning ordinance," the governing body possesses knowledge and expertise regarding the ordinance. *Id.* at 58. This rule must sometimes bend to the second rule, found in Section 603.1 of the MPC,[21] which provides:

> [i]n interpreting the language of the zoning ordinance to determine the extent of the restriction upon . . . the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

[53 P.S. § 10603.1.]

> We have held that we must "interpret ambiguous language in an ordinance in favor of the property owner and against any implied extension of the restriction." *Isaacs v. Wilkes-Barre City Zoning Hearing Bd.*, . . . 612 A.2d 559, 561 ([Pa. Cmwlth.] 1992). Thus, the general rule contained in Section 603.1 of the MPC applies only when the words of an ordinance are not free and clear from ambiguity. *Id.*

*Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp.*, 101 A.3d 1202, 1213 (Pa. Cmwlth. 2014).

Here, the ZHB did not make separate determinations regarding whether NorthPoint/422 Properties satisfied the variance criteria set forth in Section 32-1105(a) of the Ordinance as to each Parcel. Rather, the ZHB analyzed the variance criteria as to the Property as a whole. Appellants neither objected nor offered legal authority to the ZHB to support their position that the ZHB had to apply the Ordinance's variance criteria separately to each Parcel. Even if Appellants could only have raised that issue for the first time to the trial court, they did not supply legal authority to the trial court to support their claim. In addition, to the extent that

---

[21] Added by Section 48 of the Act of December 21, 1988, P.L. 1329.

14

Section 32-1105(a) of the Ordinance is unclear about whether the ZHB had to make separate findings as to each Parcel, because 422 Properties owns both Parcels and the proposed project implicates the Property as a whole, this Court defers to the ZHB's interpretation thereof in NorthPoint's/422 Properties' favor. *See Williams Holding Grp.*

**1. Section 32-1105(a)(1) of the Ordinance - Unnecessary Hardship**

Section 32-1105(a)(1) of the Ordinance required NorthPoint to prove, and the ZHB to make a finding based on substantial record evidence, that unique physical circumstances peculiar to the Property create an unnecessary hardship not generally created by the Ordinance in the neighborhood or district where the Property is located. *See* Ord. § 32-1105(a)(1) (R.R. at 276a).

"A variance is a departure from the exact provisions of a zoning ordinance." *S. Broad St. Neighborhood Ass'n v. Zoning Bd. of Adjustment*, 208 A.3d 539, 547 (Pa. Cmwlth. 2019). There are generally two types of variances: "A dimensional variance involves a request to adjust zoning regulations to use the property in a manner consistent with regulations [(i.e., setbacks)], whereas a use variance involves a request to use property in a manner . . . wholly outside zoning regulations [(i.e., not permitted by right, conditional use, or special exception)]." *Tidd v. Lower Saucon Twp. Zoning Hearing Bd.*, 118 A.3d 1, 8 (Pa. Cmwlth. 2015); *see also Hertzberg v. Zoning Bd. of Adjustment of City of Pittsburgh*, 721 A.2d 43 (Pa. 1998). "Whether an applicant is seeking a use or a dimensional variance, the applicant must, at a minimum, demonstrate that an unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest." *Nowicki v. Zoning Hearing Bd. of Borough of Monaca*, 91 A.3d 287, 292 (Pa. Cmwlth. 2014).

15

Here, Williams provided an overview of the proposed project at the ZHB hearing. He detailed that the Property would have three vehicle access points - at River Bridge Road, Township Line Road, and Toll Gate Road (near the intersection with Route 662). *See* R.R. at 68a-69a. Williams acknowledged that the Property has been vacant for many years and detailed that the proposed Amity Logistics Center would operate 24 hours per day, 7 days per week. *See* R.R. at 69a, 71a. Williams declared that the Property's access to Route 422 makes it a good fit for the area, and it would employ approximately 265 people. *See* R.R. at 69a-71a.

Tornetta testified that by the time 422 Properties acquired the Property, PennDOT's Route 422 highway project had stripped the topsoil from it to the point that there was nothing but rock at the surface or within a foot beneath the surface. *See* R.R. at 83a, 86a-87a, 95a. He articulated that during the several years before NorthPoint filed the Application, 422 Properties obtained all necessary permits and, with the permission and oversight of DEP, the Berks County Conservation District, and the Township, had been crushing enormous concrete slabs and stockpiling soil for grading and future development. *See* R.R. at 86a-87a. Tornetta recalled that 422 Properties had obtained stream crossing and sanitary sewer permits and filed joint grant applications with the Township for funds to improve Township Line Road and align other nearby roads, the work for which 422 Properties has agreed to do. *See* R.R. at 84a-85a. Tornetta also recounted that 422 Properties assisted the Township in drafting the Route 422 Overlay District Portion of the Ordinance to allow numerous permitted uses on the Property. *See* R.R. at 82a-83a, 87a. He further described working with nearby vacant property owners and PennDOT to extend River Bridge Road, which work would benefit not only 422 Properties but PennDOT's comprehensive road network plans and the neighboring property owners' activities. *See* R.R. at 88a-91a.

16

Tornetta declared that 422 Properties has actively marketed the Property for quite some time, and recounted:

> A. . . . . [W]e've come to the realization over the last number of years, the retail market, even pre-COVID, sort of -- was highly diminished, very frankly. The office market -- there's just not a market for Class A office space at this point in time.
>
> We gave ourselves the opportunity to do a hotel. Very few hotels are being built over the last six or seven years. Very frankly, you can buy a hotel at some point in time [sic] 50 cents on the dollar at this point.
>
> So we've come to the realization that flex warehouse space is prevalent in the market. Because of our configuration to the regional road network, it appears that this is the highest and best use as we sit here.
>
> Q. And with respect to anybody else, no other sales have materialized in that period of time, have they?
>
> A. No, sir.
>
> Q. So **this has been not only the highest and best use**, in your experience, **but** also **the only use** that's worked so far?
>
> A. **Correct**. We did even make many, many inquiries into the market to do the development ourselves and look for tenants to come in, whether they were restaurant or retail or whatever, and we did it unsuccessfully.

R.R. at 87a-88a (emphasis added).

In addition, the ZHB accepted Haas as an expert in the field of land planning. *See* R.R. at 97a. He confirmed that the Property's plans accompanying NorthPoint's Application, prepared at his direction, depict the Township's LI/O Zoning District, HWTOD, and SSOD boundaries and areas that would be affected by the proposed use. *See* ZHB Hearing Ex. A-6 (R.R. at 179a-186a).

17

Haas testified that a Natural Resources Conservation Service (NRCS) soil survey determined the presence of Readington soil in the Township's LI/O Zoning District. *See* R.R. at 112a. He explained, however, that the NRCS' evaluation was a "kind of a high-level view of soils" based on evident features of the area, without digging down and/or sampling soil from every property. *Id.* Haas detailed that he had a geotechnical study conducted at the Property, which included test borings and infiltration testing[22] across the Property to satisfy DEP mandates, reflected that the Readington soil was essentially stripped away during PennDOT's Route 422 construction, and what remained more or less follows the watercourses on the Property, the disturbance of which NorthPoint/422 Properties has planned to avoid and/or minimize as much as possible. *See* R.R. at 112a-115a.

Haas also represented that the steep slopes on the Property are primarily located along the streams and stream crossings, and "to get the crossings in there for the project, we need to impact those slopes."[23] R.R. at 110a-111a. He recalled that an unnamed tributary to Leaf Creek divides the Property into two pieces. *See* R.R. at 111a. He explained:

> Over time[,] Leaf Creek has just kind of carved deeper and deeper. There are some steep slopes along one of the tributaries to Leaf Creek here that we're gonna [sic] have impacts separate from the stream crossing but it's, more or less, where we're putting our stormwater. We're gonna [sic] push up against that, so our stormwater has the appropriate discharge.

_____

[22] Haas described that the infiltration testing consisted of the testers placing rings in the ground and pouring in water. He recalled that the water sat there, rather than absorbing. He declared that "there was almost no infiltration possible just [be]cause the soils aren't there to really infiltrate." R.R. at 114a.

[23] Haas learned from the Township's engineer that steep slopes created by the fill are not included in the SSOD assessment because they are manmade. *See* R.R. at 115a-117a, 123a.

18

> We're meeting all of the Township [O]rdinance requirements for stormwater discharge so, in the end, there'll be less stormwater discharge than there is now.

R.R. at 135a.

Haas also represented that there are smaller, intermittent streams/tributaries[24] on the Property, some of which were created by culverts directing water from Township Line Road. He expounded:

> [Y]ou see the large pieces at the crossings and then at the edges of our project where we're staying back from the soils, from the streams where we can, we don't want to impact the streams, have minimal impact there.
>
> Up here there is a watercourse that we're relocating as part of the project. We have to do an environmental review of it. It's with DEP. It's getting a joint permit. We're going through all the environmental steps that[ are] appropriate for it.
>
> [DEP] look[s] at the classification of the stream, what the quality is. And it goes, also, to the steep slopes, is the stream over the years -- whenever it rains . . . the culverts on Township Line Road [] feed it []. So all those culverts fill up and just dump the water down. It just goes steeper and steeper. At some point now -- it's now cut in steep slopes -- and excised a path down through till [sic] it gets to Leaf Creek. So you can stand in the middle of it, it hasn't rained for a week, it's perfectly dry, and the banks are above your head just because, over the years, it again and again just cuts in.
>
> So what we're proposing on that one is, we're actually going to flatten it out, let it flow a little bit smoother and gentler, give it some wetland banks. This goes to improvements that we're looking to build on the [Property].
>
> So we're going to relocate it around to the edge of the [P]roperty or the edge of the development area, so that's

---

[24] Haas explained that the streams/tributaries are intermittent because they are only really wet when it rains.

19

the impacts that are shown here in kind of a bulk area (indicating).

R.R. at 112a-113a; *see also* R.R. at 132a-133a. Haas declared that redirecting the stream will not affect nearby properties. *See* R.R. at 134a. When asked if there was any way to avoid the steep slopes and still develop the Property in any way, Haas answered: "No." *Id.*

Haas identified page 3 of the Exhibit A-6 plans[25] as "an overall view of all of the steep slopes and all of the high water table soils, so [the ZHB] can see the extent that we're not impacting on the [Property]. So it's, again, primarily along the streams, and we've kept back from that as much as we could." R.R. at 115a; *see also* R.R. at 181a. He continued:

> Q. And are you showing to the [ZHB] that you have minimized those impacts as much as possible?
>
> A. Correct.
>
> Q. Is it your opinion that any of those impacts to the steep slope areas or to the high water table areas, are they going to cause any negative impact to those slopes or those high water table soils?
>
> A. No, they will not have a negative impact.
>
> Q. The topography you talked about a little bit earlier, could you explain that a little bit more as you progress from Township Line Road through the site?

---

[25] Page 1 of Exhibit A-6 (the Property's plans) reflects the steep slopes on the Property in relationship to the project's areas of disturbance. *See* R.R. at 99a, 179a. Page 2 shows the high water table soils in relation to the project's disturbance areas. *See* R.R. at 99a, 111a, 180a. Page 3 represents a combination of the high water table soils and the steep slopes within the whole project and Property area. *See* R.R. at 99a, 115a, 181a. Page 4 outlines the Township's LI/O Zoning District with high water table soils and steep slopes. *See* R.R. at 99a-100a, 182a. Pages 5-8 consist of architectural elevations of the different buildings. *See* R.R. at 100a, 183a-186a. Page 9 demonstrates PennDOT's proposed road improvements that NorthPoint/422 Properties would undertake. *See* R.R. at 100a-101a.

A. If you were to cut a cross section here, the site drops significantly from Township Line Road till [sic] it gets down to Leaf Creek. So what has to happen to get a building in, you've gotta [sic] take that slope, you gotta [sic] flatten some part of it and kind of -- so you cut in, and you fill and you get your flat areas you need for development.

So the soils that have been brought in are integral in order to get the site to a buildable state and to balance the site so we don't have any more cut or fill that has to be brought in or taken out.

R.R. at 116a-117a. Haas asserted that the Property's development as specified on the plans will not have any material impact on the steep slopes or Readington soils on the Property. *See* R.R. at 124a. He added that the project is "not going to have any impact on" the floodplains. R.R. at 130a.

Haas represented that the Property's configuration (surrounded by the Township's roadway system), topography (sloping from Township Line Road, the culvert, streams, and stream crossings), in addition to the high water table, and steep slopes are unique physical circumstances that create an unnecessary hardship, not created by NorthPoint/422 Properties, that satisfies Section 32-1105(a)(1) of the Ordinance, and he opined, *inter alia*, that such unique physical characteristic will not allow for the Property to be developed for any of the uses permitted by right, conditional use, and special exception in the HWTOD and SSOD. *See* R.R. at 122a-123a. Appellants presented no evidence to the contrary.

The law is well settled that "[i]n a land use proceeding, the [ZHB] is the ultimate fact-finder and the exclusive arbiter of credibility and evidentiary weight." *Joseph v. N. Whitehall Twp. Bd. of Supervisors*, 16 A.3d 1209, 1218 (Pa. Cmwlth. 2011). Here, the ZHB found:

18. According to the testimony and evidence presented by [NorthPoint], its need for variance relief is driven by the site topography, slopes, the streams crisscrossing the

21

parcel, limitations by the surrounding infrastructure and configuration of the [] Property.

19. The exact extent of high water table soils on the [] Property is also in question. While the overlay mapping references Readington soils, [NorthPoint] testified that most of the topsoil on the site was removed by PennDOT contractors as part of Route 422 projects.

20. Encroachment into actual steep slopes and highwater table areas on the [] Property is mostly limited to the proposed stream crossings. [NorthPoint] will be obtaining approval from [DEP] as to each crossing.

21. The actual amount of highwater table soils is limited given that the topsoil was removed by PennDOT as part of its Route 422 projects.

ZHB Dec. at 4.

This Court acknowledges Section 32-1105(a)(1) of the Ordinance's mandate that the unnecessary hardship must be caused by the Property's unique physical characteristics, "not circumstances or conditions generally created by the [Ordinance] in the neighborhood or district in which the property is located." Ord. § 32-1105(a)(1). Based on page 4 of Exhibit A-6, which depicts where the HWTOD and SSOD overlay the LI/O Zoning District and the neighboring properties, *see* R.R. at 120a, 182a, Haas admitted:

> Q. And what is the net effect of that? I mean, does it essentially, in theory then, prohibit development on the vast majority of those parcels?
>
> A. For the LI/O [Zoning] District is -- the vast majority, there's only some of the residential smaller parcels that are unaffected by both the high water table soils or the steep slopes.
>
> Q. So when you take the combination of the LI/O [Zoning] District and the Route 422 [O]verlay District . . . -- those permit a warehouse as a by[-]right development. Is that fair?

22

A. Correct.

Q. And then you take a look at the implication of the [HWTOD and SSOD], as well, the net effect is, arguably, you can't develop the [P]roperty.

A. Correct. And all the other properties within the LI/O [Zoning] District except for a couple of the small ones.

R.R. at 121a. Notwithstanding Haas' recognition that the HWTOD and SSOD affect other properties in the LI/O Zoning District, his testimony and the ZHB's findings focused on the Property's other unique physical characteristics.

In *Boyer v. Zoning Hearing Board of Franklin Township*, 987 A.2d 219 (Pa. Cmwlth. 2010), another case involving a variance from a steep slope overlay, the zoning hearing board denied the variance, in part, stating: "The physical conditions of [the a]pplicant's [p]roperty are not the reason for which the variance is sought; rather the physical conditions dictate application of [the steep slope zoning requirements] and it is from the application of those zoning requirements that [the a]pplicants seek their variance." *Id.* at 221. Therein, the applicants sought to build a single-family home on a plateau on a mountaintop tract. Although such use was permitted by right, the ordinance contained a steep slope conservation overlay (SSCO) that prohibited substantial improvements on properties with slopes in excess of 15%. The trial court affirmed the denial.

> On appeal, this Court affirmed, stating:
>
> Having considered [the a]pplicants' argument, we note that it is striking for what it does *not* purport; [the a]pplicants do not argue that the unnecessary hardship has not been caused by "the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located." Section 910.2(a)(1) of the MPC, 53 P.S. § 10910.2(a)(1).[26] Presumably, [the a]pplicants fail

---

[26] Section 910.2(a)(1) of the MPC, like Section 32-1105(a)(1) of the Ordinance, states:

23

to make this argument because they cannot legitimately do so where even they admit that they "are unable to use the tract they own to erect a house because of the [SSCO]." ([the a]pplicants' brief at 19.)[.]  In other words, if it w[as] not for the fact that the [p]roperty was within the [S]SCO, there is no question that [the a]pplicants could erect their single-family residence on an eight-and-one-half-acre plateau in the [o]pen [s]pace [z]one.  Given [the a]pplicants' failure to show that their unnecessary hardship arises from the unique physical circumstances of their property as opposed to the circumstances generally created by the [o]rdinance, an undoubtedly relevant criterion, [this Court] cannot agree with [the a]pplicants' assertion that the [zoning hearing board] abused its discretion or committed legal error in denying their variance request.

*Boyer*, 987 A.2d at 223 (a ZHB properly denies a variance application where the purported hardship is the result of the general effect of the zoning district's overlay upon the zoning district); *see also In re Merion Ridge, LLC* (Pa. Cmwlth. No. 1567 C.D. 2023, filed Dec. 9, 2024),[27] slip op. at 27 ("[T]his Court has expressly declined to consider steep slopes as a unique physical characteristic when the relief sought relates to those steep slopes[;]" "we discern no error or abuse of discretion in the [zoning hearing b]oard's refusal to consider the steep slopes of the [p]roperty as part of any hardship analysis.").  However, if an applicant demonstrates that there are physical circumstances or conditions other than the steep slopes (and high water

---

That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the zoning ordinance in the neighborhood or district in which the property is located.

53 P.S. § 10910.2(a)(1).

[27] Unreported decisions of this Court issued after January 15, 2008, may be cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures.  210 Pa. Code § 69.414(a).  The unreported cases included herein are cited for their persuasive value.

table soils), such as lot shape, roadways, bisecting streams, etc., that are unique to a property and result in hardship, *Boyer* is not controlling. *See Merion Ridge, LLC*; *see also Pohlig Builders, LLC v. Zoning Hearing Bd. of Schuylkill Twp.*, 25 A.3d 1260 (Pa. Cmwlth. 2011).

Here, substantial record evidence supported the ZHB's factual finding that NorthPoint's/422 Properties' "need for variance relief is driven by the site topography, slopes, the streams crisscrossing the parcel, limitations by the surrounding infrastructure and configuration of the [] Property[,]" ZHB Dec. at 4, and not strictly based on the HWTOD and SSOD. Thus, *Boyer* does not control in this case. Because substantial record evidence supported that finding, the ZHB did not err by concluding that unique physical circumstances peculiar to the Property constitute an unnecessary hardship not generally created by the Ordinance in the Property's neighborhood or district. *See* Ord. § 32-1105(a)(1) (R.R. at 276a).

## 2. Section 32-1105(a)(2) of the Ordinance - No Possibility to Develop the Property in Conformity with the Ordinance

Section 32-1105(a)(2) of the Ordinance required NorthPoint to prove, and the ZHB to make a finding based on substantial record evidence, "[t]hat because of [its] physical circumstances or conditions, there is no possibility that the [P]roperty can be developed in strict conformity with the [Ordinance] and that the authorization of a variance is therefore necessary to enable the reasonable use of the [P]roperty[.]" Ord. § 32-1105(a)(2) (R.R. at 276a). The Pennsylvania Supreme Court has clarified:

> [A]n applicant for a variance is *not required* to show that the property at issue is valueless without the variance or that the property cannot be used for any permitted purpose. . . . Showing that the property at issue is "valueless" unless the requested variance is granted "is but one way to reach a finding of unnecessary hardship; it is not the only factor nor the conclusive factor in resolving a

25

> variance request." *Hertzberg*, [721 A.2d] at 48. Rather, "multiple factors are to be taken into account" when assessing whether unnecessary hardship has been established. *Id*.

*Marshall*, 97 A.3d at 330 (emphasis in original).

The parties agree that, but for the HWTOD and SSOD, the proposed project is permitted in the LI/O Zoning District and the Route 422 Overlay District. Uses permitted by right in the HWTOD include general agricultural uses; municipal use; public and private recreation uses, including parks (except amusement parks), playgrounds, picnic grounds, golf courses, driving ranges, archery ranges, target ranges, horse riding trails, hiking trails, camping, boating, fishing and hunting; woodland, game preserve, wildlife sanctuary, or similar conservation use; and accessory uses related thereto. *See* Ord. § 32-504(c) (R.R. at 267a). Uses permitted by right in the SSOD include general agricultural uses; municipal use; woodland or hunting preserve, wildlife sanctuary or other similar uses when conducted in conformance with adequate soil erosion protection practices; and related accessory uses not constructed on slopes exceeding 25% in grade. *See* Ord. § 32-505(c) (R.R. at 268a).

Uses permitted in the HWTOD by conditional use include "[p]ublic or private recreation involving permanent structures, impervious cover, or regrading are permitted only when there is no practical alternative . . . ." Ord. § 32-504(d) (R.R. at 267a). Uses permitted in the SSOD by conditional use include "[p]rivate and public recreation uses including horse riding trails, hiking trails, boating, fishing, camping, [and] hunting . . . ." Ord. § 32-505(d) (R.R. at 268a).

Uses permitted in the HWTOD by special exception include churches or similar places of worship, if they are not located on soils that are considered hydric, alluvial or having a high water table; commercial and industrial uses, such as yard areas, parking and loading areas, and airport landing strips; public utility

26

uses; and related accessory uses and structures. *See* Ord. § 32-504(e) (R.R. at 267a). Uses permitted in the SSOD by special exception include public utility uses and related accessory uses. *See* Ord. § 32-505(e) (R.R. at 268a).

Tornetta testified that the Property was vacant for many years before and after 422 Properties purchased it, and no one has come forward proposing any of the permitted uses. *See* R.R. at 87a-88a. Haas also testified that the Property could not be developed for such uses in light of its unique physical characteristics combined with the HWTOD and SSOD. *See* R.R. at 121a. Appellants did not offer any testimony to the contrary.

The ZHB found based on Haas' testimony, *see* R.R. at 123a-124a, that the need for variance relief at the Property "is driven by the site topography, slopes, the streams crisscrossing the parcel, limitations by the surrounding infrastructure and configuration of the [] Property." ZHB Dec. at 4. The ZHB also found based on "the testimony and evidence presented by [NorthPoint], the [] Property cannot be developed in strict conformity with the [] Ordinance given the above characteristics of the [] Property." ZHB Dec. at 5. Because substantial record evidence supported those findings, the ZHB did not err by concluding that "there is no possibility that the [P]roperty can be developed in strict conformity with the [Ordinance] and that the authorization of a variance is therefore necessary to enable the reasonable use of the [P]roperty[.]" Ord. § 32-1105(a)(2) (R.R. at 276a).

## 3. Section 32-1105(a)(3) of the Ordinance - Unnecessary Hardship Not Self-Created

Section 32-1105(a)(3) of the Ordinance required NorthPoint to prove, and the ZHB to make a finding based on substantial record evidence, "[t]hat such unnecessary hardship has not been created by [NorthPoint/422 Properties.]" Ord. § 32-1105(a)(3) (R.R. at 276a). The ZHB found based on Haas' testimony, *see* R.R.

27

at 123a-124a, that the need for variance relief at the Property "is driven by the site topography, slopes, the streams crisscrossing the parcel, limitations by the surrounding infrastructure and configuration of the [] Property[,]" ZHB Dec. at 4, not by NorthPoint or 422 Properties. Even Appellants admit that "there is no evidence that [NorthPoint/422 Properties] completed any action on the Property to create the application of the SSOD or HWTOD to the Property." Appellants' Br. at 17. Because substantial record evidence supported such a finding, the ZHB did not err by concluding that NorthPoint/422 Properties did not create the unnecessary hardship attending the Property. *See* Ord. § 32-1105(a)(3) (R.R. at 276a).

### 4. Section 32-1105(a)(4) of the Ordinance - Variance Will Not Alter the Neighborhood's Essential Character

Section 32-1105(a)(4) of the Ordinance required NorthPoint to prove, and the ZHB to make a finding based on substantial record evidence that the variances "will not alter the essential character of the neighborhood or district in which the [P]roperty is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare[.]" Ord. § 32-1105(a)(4) (R.R. at 276a).

Granting the variances allows the Property to be developed for warehouse use. NorthPoint's/422 Properties' proposed warehouse use is permitted by right in the LI/O Zoning and Route 422 Overlay Districts. Section 32-407(a) of the Ordinance makes clear that

> [t]he purpose of the [LI/O Zoning] District is to provide an area for a generalization of light industrial land uses or for the development of a unified office park of professional and corporate offices which services and provides for the basic needs of the surrounding residential communities of the Township. The [LI/O Zoning] District is located and centralized in an area which will adequately accommodate industrial and commercial growth provided that each

28

existing and proposed land use does not affect the public health, safety and general welfare of the adjacent residential areas.

Ord. § 32-407(a) (R.R. at 261a).

> According to Section 32-501(b) of the Ordinance,
>
> [t]he intent of th[e Route 422] Overlay District is to:
>
> (1) Encourage the unified development of large parcels along the Route 422/Benjamin Franklin Highway corridor.
>
> (2) Provide development flexibility and respond to market demands.
>
> (3) Create tax base development and job opportunities.
>
> (4) Provide opportunities for commercial and residential development sufficient to meet the needs not only [sic] the local, but also of the regional market.

Ord. § 32-501(b) (R.R. at 265a). To that end, Section 32-501(a) of the Ordinance states:

> Use of the provisions of Route 422 Overlay [District] may be permitted as a development option, provided a site meets the following qualifying criteria:
>
> > (1) Parcels must have a minimum 300 feet of frontage along [U.S.] Route 422/Benjamin Franklin Highway.
> >
> > (2) Parcels must have a minimum gross acreage of 50 acres.
> >
> > (3) Parcel or collection of parcels must be under a single ownership or condominium or be the subject of an application filed jointly by all [o]wners subject to agreement that development shall proceed under single direction.

Ord. § 32-501(a) (R.R. at 265a).

29

Sections 32-504(a)(2) and 505(a)(2) of the Ordinance declare that the general purposes of the HWTOD and SSOD are "to minimize hazards to the public health." Ord. §§ 32-504(a)(2) (R.R. at 266a), 32-505(a)(2) (R.R. at 268a). More specifically, the HWTOD's purpose is to "secure environmentally sensitive lands[ and] encourage the utilization of appropriate construction practices . . . ." Ord. § 32-504(a)(2) (R.R. at 266a). The SSOD's specific purpose is "to protect and prevent areas from increased erosion and runoff[,] secure environmentally sensitive lands[ and] encourage the utilization of appropriate construction practices . . . ." Ord. § 32-505(a)(2) (R.R. at 268a). Section 32-505(f) of the Ordinance relating to development procedures in the SSOD also clearly authorizes a zoning officer to issue a building permit when "a plan is submitted indicating, to the satisfaction of the Township['s e]ngineer, that all potential problems of steep slopes have been resolved." Ord. § 32-505(f)(1) (R.R. at 268a-269a). Clearly, the purposes of the HWTOD and SSOD are not to prevent development in areas of a property affected by those conditions, but to ensure "appropriate construction practices" in those areas. Ord. § 32-505(a)(2) (R.R. at 268a).

Because the Ordinance contemplated a warehouse operation at the Property, Appellants' and other neighbors' concerns regarding traffic, lighting, and noise due to the Property's development and operation were not relevant to the ZHB's consideration of variances from the HWTOD and SSOD. The only matter for the ZHB's consideration was whether the proposed development's encroachments into the HWTOD and SSOD would alter the neighborhood's essential character, impair the use or development of adjacent properties, or negatively affect the public welfare.

Tornetta and Haas testified that Readington soils are very limited at the Property and, the impact on those soils by the development will be minimal. *See* R.R. at 83a, 86a-87a, 114a-115a, 128a-130a. In addition, Haas revealed that he

30

worked with the Township to insure that steep slope encroachment area concerns have been satisfied. *See* R.R. at 118a, 133a. Haas also testified extensively regarding the steps NorthPoint/422 Properties have taken and will continue to take to avoid disturbing those limited portions of the Property that may be subject to Readington soils and are affected by steep slopes. *See* R.R. at 115a, 124a, 129a, 131a. Haas declared that in light of the scope of the proposed project, the traffic improvements will not have a material negative impact on the character of the neighborhood or the surrounding properties. *See* R.R. at 116a. Appellants did not offer any evidence to the contrary.

> Based on the evidence, the ZHB found:
>
> 22. No floodplains will be disturbed by the proposed buildings.
>
> . . . .
>
> 24. No evidence was submitted that the specific variance relief sought would have a negative impact on the surrounding community. Public water and public sewer will be provided, and the project will be designed to fully comply with the Township's Stormwater Management Ordinance and related provisions, as applicable.
>
> 25. The Township['s] Board of Supervisors and [the] Township['s] Planning Commission submitted letters recommending approval of the instant zoning relief . . . .

ZHB Dec. at 4-5.

Because substantial record evidence supported those findings, the ZHB did not err by concluding that the variances "will not alter the essential character of the neighborhood or district in which the [P]roperty is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare[.]" Ord. § 32-1105(a)(4) (R.R. at 276a).

31

**5. Section 32-1105(a)(5) of the Ordinance - Variance is the Minimum to Afford Relief**

Section 32-1105(a)(5) of the Ordinance required NorthPoint to prove, and the ZHB to make a finding based on substantial record evidence "[t]hat the variance as granted by the [ZHB] is the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue." Ord. § 32-1105(a)(5) (R.R. at 276a).

Haas testified regarding his work with the Township in designing the proposed project to minimize encroachments in the HWTOD and SSOD. *See* R.R. at 110a-112a. Specifically, he was skeptical that any Readington soils are present on the Property, but nevertheless pledged that any encroachment into Readington soils would be minimal. *See* R.R. at 114a-115a. Haas also testified at length that the areas of SSOD encroachment are primarily limited to portions of the Property along Leaf Creek and one of its tributaries, and his design, prepared with input from the Township's Board of Supervisors, minimizes the encroachment while still complying with the Township's stormwater requirements. *See* R.R. at 124a-127a, 134a-136a. Haas declared:

> Q. Do you believe that the size of the buildings and the location of the improvements on the [P]roperty is the minimum size development that we can ask for relief from here this evening?
>
> A. Correct.
>
> Q. And is it the least modification of the [O]rdinance we could possibly consider?
>
> A. Correct.

R.R. at 125a-126a. Appellants offered no evidence to the contrary.

Based upon the evidence, the ZHB found:

> 20. Encroachment into actual steep slopes and highwater table areas on the [] Property is mostly limited to the

32

> proposed stream crossings.  [NorthPoint] will be obtaining approval from [DEP] as to each crossing.
>
> 21. The actual amount of highwater table soils is limited given that the topsoil was removed by PennDOT as part of its Route 422 projects.

ZHB Dec. at 4.  Because substantial record evidence supported those findings, the ZHB did not err by concluding that "[t]he variance as granted by the [ZHB] is the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue."  Ord. § 32-1105(a)(5) (R.R. at 276a).

Based on the foregoing, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Jason Hoekstra and Joanna Hoekstra, : 
                Appellants : 
                     : 
              v. : 
                     : 
Amity Township Zoning Hearing : 
Board, Amity Township, and 422 :   No. 723 C.D. 2023
Properties, L.P. : 

## O R D E R

AND NOW, this 18th day of March, 2025, the Berks County Common Pleas Court's June 8, 2023 order is affirmed.

_____
ANNE E. COVEY, Judge